UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:26-cv-2173

MATTHEW LAROSIERE and JOHN ELIK,

Plaintiffs,

v.

CODY RUTLEDGE WILSON; DEFCAD, INC.;
DEFENSE DISTRIBUTED; and
DD FOUNDATION LLC,

Defendants.

_____________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiffs Matthew Larosiere and John Elik sue Defendants Cody Rutledge Wilson, DEFCAD, Inc., Defense Distributed, and DD Foundation LLC for copyright infringement under 17 U.S.C. § 501 and knowingly providing and distributing false copyright management information under 17 U.S.C. § 1202(a). Elik also asserts false affiliation and false endorsement under 15 U.S.C. § 1125(a)(1)(A).

## BACKGROUND

2. Larosiere brings this action for new reproductions and distributions of his copyrighted works beginning in August 2026, after the resolution of his earlier Middle District actions and after Defendants had removed the earlier infringing copies.

3. Elik seeks relief for the new August 2026 infringements of his independently owned photographs, for completed infringements of seven other photographs he owns, and for Defendants' unauthorized and continuing use of his commercial identity.

4. The earlier Middle District cases were *Larosiere v. Wilson*, No. 6:24-cv-01629 (hereinafter "*Larosiere v. Wilson*"), and *Larosiere v. Wilson*, No. 6:25-cv-02112 (hereinafter "*Larosiere v. Wilson II*"). Those cases were resolved by settlement in April 2026.

**PARTIES**

5. Plaintiff Matthew Larosiere is a natural person and citizen of Florida who resides and conducts business in Florida, including Orange County. He is an attorney, author, and firearms-industry advocate who creates and acquires rights in literary and visual works. He owns the exclusive rights in the works identified below as the Larosiere Works.

6. Plaintiff John Elik is a natural person and citizen of Illinois residing in Madison County. He is a mechanical engineer, designer, photographer, and author, professionally known as IvanTheTroll. He owns the exclusive rights in the photographs identified below as the Elik Works.

7. Defendant Cody Rutledge Wilson is a natural person residing in Austin, Texas. Wilson directs and controls the operations of DEFCAD, Inc., Defense Distributed, and DD Foundation LLC and personally participates in and directs the conduct alleged here.

8. Defendant DEFCAD, Inc. ("DEFCAD") is a corporation organized under Texas and Delaware law, with its principal operations in Austin, Texas. DEFCAD owns and operates DEFCAD.com, through which it displays and distributes downloadable files, accompanying documentation, and photographs, and markets access to its file sharing business.

9. Defendant Defense Distributed is a Texas nonprofit corporation with its principal operations in Austin, Texas. It operates the DDLegio membership business and related commercial websites, including Ghostguns.com, and uses access to DEFCAD's file sharing business—for which a paid DDLegio membership is a prerequisite to accessing the complained-of files—to promote its memberships and associated business.

10. Defendant DD Foundation LLC ("DD Foundation") is a Texas limited liability company controlled by Wilson. On information and belief, it participates in the integrated commercial operation described below and receives revenues shared with DEFCAD and Defense Distributed.

11. DEFCAD, Defense Distributed, and DD Foundation are referred to collectively as the "Business Entity Defendants."

**THE BUSINESS ENTITY DEFENDANTS ARE WILSON'S ALTER EGOS**

12. Wilson exercises dominant control over each Business Entity Defendant's policies, personnel, finances, and operations. He directs what materials are published through DEFCAD.com and has authority to cause the materials to be removed.

13. DEFCAD has identified Wilson as its president and director. DEFCAD and Defense Distributed have used the same business address at 2320 Donley Drive, Suite C, Austin, Texas, and DEFCAD's Texas registration identified Defense Distributed as its registered agent.

14. Wilson has also claimed to reside at the same 2320 Donley Drive address.

15. Wilson is Defense Distributed's director and governing member and has acted as its registered agent. Defense Distributed's personnel, membership operation, and resources support the DEFCAD file sharing business and its promotion. Wilson uses those resources to carry out the publication decisions described in this complaint.

16. On information and belief, Wilson controls DD Foundation as its manager or controlling member and directs its receipt and disposition of revenues from the same enterprise. DD Foundation has used a registered-office address at 5900 Balcones Drive, Suite 100, Austin, Texas.

17. In their complaint in Defense Distributed v. Elik, No. 9:25-cv-81197-DMM (S.D. Fla.) (the "Southern District Action"), the Business Entity Defendants described their relationship as involving shared profits. Their file sharing business, membership, and related sales operations are coordinated.

18. The Business Entity Defendants do not have functioning directorial boards. They do not regularly meet, do not take minutes, and the members (besides Wilson) have no role in the operation or maintenance of the companies.

19. At least one of the supposed board members of these companies is currently a fugitive from justice.

20. DEFCAD supplies the website and file-distribution infrastructure and publishes the accused project pages. Its personnel select and prepare the files, associate purported creators with them, and serve the resulting pages and downloads to users.

21. Defense Distributed supplies personnel and promotes the file sharing business through its membership operation and communications. On information and belief, its personnel participate in preparing and publishing the accused files while acting within the scope of their duties for Defense Distributed and at Wilson's direction.

22. On information and belief, DD Foundation knowingly participates in the Business Entity Defendants' shared-revenue operation through Wilson, who directs its activities and its participation in the exploitation of the accused works.

23. On or about August 16, 2018, Wilson consolidated substantial amounts of cryptocurrency from accounts belonging to himself and the then-existing Business Entity Defendants into a single account.

24. On or about August 31, 2018, he transferred the consolidated cryptocurrency to another account accessible to him for personal use.

25. That consolidation mixed corporate cryptocurrency with Wilson's personal assets.

26. On information and belief, Wilson has continued to commingle personal and corporate funds, particularly Defense Distributed's funds, and has transferred corporate assets to himself and third parties for personal purposes.

27. On information and belief, Wilson uses the Business Entity Defendants to receive and shift proceeds from their common operations, while diverting assets to himself and persons associated with him.

28. DD Foundation previously identified Wilson's father, Dennis K. Wilson, as an officer. After the first Middle District action was filed, Wilson removed his father from that position and replaced his father with himself.

29. On information and belief, the replacement of Wilson's father with himself was part of Wilson's effort to obscure the disposition of assets and impede recovery from the common enterprise.

30. Wilson has also made demands on his personal letterhead for repayment of sums allegedly owed to Defense Distributed, including demands sent in October and November 2024 to a former contractor.

31. In the October and November 2024 demands identified above, he demanded payment to himself.

32. Wilson has used the Business Entity Defendants' personnel, publications, and assets to advance his personal harassment and intimidation campaigns against Plaintiffs and to carry out the copying and identity misuse alleged here.

33. On information and belief, Wilson uses the separation of nominal entities to obscure responsibility and place proceeds beyond the reach of persons whose rights the enterprise violates.

34. The misuse of the corporate forms facilitates continued exploitation of Plaintiffs' works and Elik's identity, diverts the resulting proceeds, and impairs Plaintiffs' ability to obtain effective relief. Respecting that misuse as a complete

separation of persons would permit Wilson to retain the benefits of conduct he directs while attributing responsibility to interchangeable entities.

35. Plaintiffs allege that each Business Entity Defendant is Wilson's alter ego and instrumentality with respect to the conduct at issue and seek to hold them jointly and severally liable.

## DEFCAD'S PUBLICATION PROCESS

36. DEFCAD personnel review, prepare, and select files for publication on Defcad.com. Employees including Garret Walliman and Thomas Odom have performed that work under Wilson's direction.

37. After that review, an administrator assigns a "creator" or contributor identity to a project page. The assigned identity can differ from the person who actually uploaded the files. Wilson and his personnel can select those identities, revise the pages, and remove files.

38. On information and belief, the August 2026 postings identified below were made by Wilson or employees acting at his direction, within the operations of DEFCAD and Defense Distributed and for the shared commercial benefit of the Business Entity Defendants. Wilson approved and directed publication notwithstanding his knowledge of Plaintiffs' claims.

39. On information and belief, Wilson or an employee acting at his direction created or controlled the ThirdEyeAgent account on Defcad.com used for the SF5 media posting. Wilson or personnel acting at his direction used the TexasRanger account on Defcad.com for the other six media postings.

40. DEFCAD promotes its file-sharing business through project pages, creator profiles, its homepage, newsletters, and paid membership offerings. Defense Distributed promotes and benefits from the related membership business.

41. Defendants control the "view" and "download" counters displayed on the accused project pages. Plaintiffs have repeatedly observed changes to those counters that understated previously displayed activity.

42. On information and belief, based on those repeated observations and Defendants' control of the website, Wilson and personnel acting at his direction manually alter or reset the view and download counters on the infringing-work pages to make the extent of dissemination appear smaller than it is. The true extent of copying and distribution is reflected in records within Defendants' control.

43. In addition to discrepancies with view and download counts, Plaintiffs have observed archived pages and snapshots showing evidence of Defendants' infringements being taken down without explanation.

44. On information and belief, Defendants themselves have taken steps to prevent the collection and retention of this evidence, including by directing third parties to delete or remove this evidence.

45. During *Larosiere v. Wilson* and *Larosiere v. Wilson II*, many thousands of downloads and views of the infringed works were racked up based on the public view counters. Defendants failed to produce materials detailing the actual extent of these numbers when requested.

## JURISDICTION AND VENUE

46. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), 17 U.S.C. § 1203(a), and 15 U.S.C. § 1121(a). Plaintiffs' claims arise under the Copyright Act and the Lanham Act.

47. DEFCAD conducts business with Florida customers by soliciting memberships, advertising its paid downloads, and supplying downloadable files to users in Florida. Defense Distributed markets and receives revenues from the related membership operation. On information and belief, DD Foundation knowingly participates in the resulting shared revenues through the integrated operation Wilson directs.

48. The accused files were made available for delivery into Florida through that operation and were in fact delivered into this District. On or about August 29, 2026, Larosiere accessed DEFCAD.com from a computer located in Orlando, Florida, downloaded each of the available infringing postings identified below, and confirmed that they contained identical copies of the respective Plaintiffs' works.

49. On information and belief, others in Florida have accessed DEFCAD.com and downloaded each of the available infringing postings identified below.

50. DEFCAD is subject to specific personal jurisdiction under section 48.193(1)(a)1 and 2, Florida Statutes, because it conducts the foregoing business in Florida and committed the alleged tortious distribution and associated false-information publication through its website in connection with delivery of the accused works in Florida.

51. Defense Distributed is subject to specific personal jurisdiction under section 48.193(1)(a)1 and 2, Florida Statutes, because its personnel and membership operation participate in and promote the challenged distribution to Florida customers. Its purposeful commercial activities and participation in the accused publications connect it to the transactions and injury alleged in this action.

52. DD Foundation is subject to specific personal jurisdiction through its knowing participation, under Wilson's direction, in the integrated business directed to Florida and, alternatively, through the supported alter-ego relationships alleged in paragraphs 12 through 35.

53. Wilson is subject to specific personal jurisdiction because he personally directs and participates in the publication, distribution, and identity misuse through a business serving Florida customers. He knew Larosiere resides and conducts business in Florida, had litigated the ownership of the same Larosiere-owned Works in this District, and nevertheless directed the new distribution of those works through the same operation.

54. The false-affiliation claims arise from the use of Elik's identity to present and promote the same commercial file sharing business and related offerings to customers, including customers in Florida. Plaintiffs allege purposeful commercial conduct and actual distribution into the forum.

55. Venue is proper in this District under 28 U.S.C. § 1400(a) for the copyright and related Title 17 claims because Defendants may be found here for purposes of the conduct alleged. Venue is also proper under 28 U.S.C. § 1391(b)(2)

because a substantial part of the events giving rise to the claims occurred in this District, including delivery of the accused works in Orlando through the commercial operation described above.

**PRIOR NOTICE AND THE NEW PUBLICATIONS**

56. Following resolution of the earlier Middle District actions in April 2026, Defendants removed the works then at issue. The August 2026 publications alleged here were newly created postings after that cessation.

57. In the Southern District Action, Elik filed counterclaims asserting infringement of his independently owned copyright in a 3011 photograph registered as VA0002479454. The counterclaims identified additional infringement, stated that further registrations were pending, and advised that Elik intended to pursue those rights. The filing thus placed Defendants on notice of Elik's claims.

58. On May 8, 2026, the Southern District court declined to permit the counterclaims to proceed because of the court's interpretation of a scheduling order. The court did not adjudicate the merits of Elik's claims. *Defense Distributed v. Elik*, No. 9:25-cv-81197-DMM, ECF No. 132 (S.D. Fla. May 8, 2026).

59. Elik also advised during discovery, prior to August 2026, in that action that he was pursuing additional registrations and would pursue his copyright claims in another venue if necessary. Defendants therefore knew that exclusion of the counterclaims on scheduling grounds did not represent Elik's abandonment of his copyrights or authorization to copy his works.

60. On August 23, 2026, DEFCAD sent a newsletter entitled "Sten Eleven and The Bullpen" to its approximately 150,000-user subscriber base. Wilson wrote

or directed its publication. The newsletter disparaged Elik and discussed purported "Elikian doctrine" in connection with piracy; it also referred to Larosiere through variants of Fuddbusters, the name of Larosiere's YouTube channel.

61. The newsletter caused Elik to inspect DEFCAD.com. He discovered renewed copying of Larosiere's works and new postings containing his own photographs. Larosiere then performed the August 29, 2026 Florida downloads described above and confirmed the copied material against the Plaintiffs' works.

62. On or about August 22, 2026, Defendants created the seven media postings identified below. The pages' publication information and release histories identify August 2026 releases and describe the packages as documentation, images, and other non-3D files drawn from original uploads. The copied literary and photographic expression is the subject of this action.

63. Each of the seven media postings required a paid membership to Defendants' Legio service in order to download the accused works.

## LAROSIERE'S COPYRIGHTED WORKS AND THE REPEAT INFRINGEMENTS

64. Larosiere owns the exclusive reproduction, distribution, and public-display rights in the following literary and photographic works, collectively the "Larosiere Works."

65. The SF5 Build Tutorial is an original literary work registered with the United States Copyright Office as TX0009372196, with an effective date of registration of December 12, 2024. Larosiere acquired the SF5 rights by written

assignment on October 28, 2023. The registration predates the August 2026 postings. This work was previously among the works at issue in *Larosiere v. Wilson.*

66. Larosiere also owns the fifty photographs at issue here within the SF5 group registered as VA0002381769, with an effective date of registration of December 23, 2023. His ownership arises from the same October 28, 2023 written assignment. The registration predates the August 2026 postings. These fifty photographs were previously among the works at issue in *Larosiere v. Wilson*.

67. Larosiere owns the ninety-six Amigo Grande photographs at issue here within registration VA0002381513. The Amigo Grande rights were assigned to him in writing on February 27, 2022. The registration became effective December 23, 2023. These ninety-six photographs were previously among the works at issue in *Larosiere v. Wilson*.

68. Larosiere owns the six photographs within registration VA0002449526 that are reproduced in the 10/22 media posting below. Those rights were assigned to him in writing on April 14, 2025. The registration application was filed May 3, 2025, and a registration certificate issued before this action. These six photographs were previously among the works at issue in *Larosiere v. Wilson II*.

69. Larosiere holds certificates of registration for all of the works identified above. The works contain original expressive text or original photographic expression. Larosiere owned the exclusive rights asserted here before the new publications and continues to own them.

70. Defendants published "SF5-3EYE-Remix_V1.0 BETA - Media" (the "SF5 Repeat Posting").[1] It reproduces the entire literary work registered as TX0009372196, fifty photographs registered as VA0002381769, and ninety-six photographs registered as VA0002381513. The page identifies ThirdEyeAgent as the creator or contributor.

71. Defendants published "Ivan's 3D Printable 10/22 Receiver - Media" (the "10/22 Repeat Posting").[2] It reproduces six photographs registered as VA0002449526. The page identifies TexasRanger as the creator or contributor.

72. Beginning on or about August 22, 2026, Defendants reproduced the Larosiere Works in those packages and distributed copies through the publicly available download pages. The copies Larosiere downloaded on August 29 were identical reproductions of the protected works. The two postings remained available when inspected again in September 2026.

73. Larosiere did not authorize these new reproductions, distributions, or public displays. Neither ThirdEyeAgent nor TexasRanger owns the rights asserted by Larosiere or has authority from him to license the accused uses.

74. The cessation of the former postings preceded the creation of the SF5 Repeat Posting and 10/22 Repeat Posting. Larosiere seeks relief for these new acts and their continuation.

---

[1] https://defcad.com/library/sf5-3eye-remix_v10-beta-media, archived at https://web.archive.org/web/20260823200116/https://defcad.com/library/sf5-3eye-remix_v10-beta-media

[2] https://defcad.com/library/ivans-3d-printable-1022-receiver-media, archived at https://web.archive.org/web/20260825000840/https://defcad.com/library/ivans-3d-printable-1022-receiver-media

75. The SF5 Repeat Posting and 10/22 Repeat Posting each contain page metadata identifying the posting as a "CreativeWork," identifying the assigned account as its creator, and separately identifying DEFCAD as its publisher.

**ELIK'S COPYRIGHTED WORKS AND THE NEW INFRINGEMENTS**

76. Elik is the author and owner of the photographs identified below, collectively the "Elik Works." He owns the exclusive rights to reproduce, distribute, and publicly display those photographs. They embody original photographic expression and are distinct from the works whose copyrights were assigned to Larosiere.

77. Elik's first Group Registration of Photographs from 2021 is registered as VA0002479454, effective October 27, 2025. Six photographs from this registration are at issue: four in the new postings and two in the removed Amigo Grande posting described below.

78. Elik's second Group Registration of Photographs from 2021 is registered as VA0002499002, effective April 19, 2026. Forty-four distinct photographs from this registration are at issue. Forty-three appear in both of the 3011 packages described below.

79. Elik's Group Registration of Photographs from 2022 is registered as VA0002498997, effective April 19, 2026. Twenty-six photographs from this registration are at issue: twenty-five in the new postings and one in the removed BUBAR posting.

80. Elik's Group Registration of Photographs from 2023 is registered as VA0002499003, effective April 19, 2026. Three photographs from this registration are at issue in the removed SF5 and Plastikov V4 postings.

81. Elik's Group Registration of Photographs from 2024 is registered as VA0002498998, effective April 19, 2026. One photograph from this registration is at issue in the removed NS3 posting.

82. The Copyright Office issued all five registrations before this action. Elik owned the asserted copyrights when the challenged acts occurred and continues to own them.

83. The "3011 Posting"[3] contains one Elik photograph registered as VA0002479454 and forty-four Elik photographs registered as VA0002499002. The page identifies TexasRanger as the creator or contributor.

84. The "3011DS Posting"[4] contains forty-three Elik photographs registered as VA0002499002 and three Elik photographs registered as VA0002498997. The page identifies TexasRanger as the creator or contributor.

85. The "PV3 Posting"[5] contains two Elik photographs registered as VA0002479454 and twenty-one Elik photographs registered as VA0002498997. The page identifies TexasRanger as the creator or contributor.

---

[3] https://defcad.com/library/3011-printable-1911-frame-media, archived at https://web.archive.org/web/20260906210750/https://defcad.com/library/3011-printable-1911-frame-media

[4] https://defcad.com/library/3011-double-stack-media, archived at https://web.archive.org/web/20260824233944/https://defcad.com/library/3011-double-stack-media

86. The "PCD Posting"[6] contains one Elik photograph registered as VA0002498997. The page identifies TexasRanger as the creator or contributor.

87. The "UBAR Posting"[7] contains one Elik photograph registered as VA0002479454. The page identifies TexasRanger as the creator or contributor.

88. The forty-three photographs registered as VA0002499002 in the 3011DS Posting are also among the forty-four photographs from that registration in the 3011 Posting. The five new Elik postings therefore contain seventy-three unique photographs, with forty-three of them being copied in two different acts of infringement.

89. Beginning on or about August 22, 2026, Defendants reproduced and distributed the Elik Works through those five postings. Larosiere's August 29 Florida downloads contained identical copies of the identified photographs. The five postings remained available when inspected again in September 2026.

90. Elik did not authorize the new reproductions, distributions, or public displays. TexasRanger is not the author or owner of Elik's photographs and has no authority from Elik to license these uses.

---

[5] https://defcad.com/library/plastikov-v30-3d-printable-akm-receiver-media, archived at https://web.archive.org/web/20260919035655/https://defcad.com/library/plastikov-v30-3d-printable-akm-receiver-media

[6] https://defcad.com/library/printable-case-deflector-ar15-media, archived at https://web.archive.org/web/20260919035919/https://defcad.com/library/printable-case-deflector-ar15-media

[7] https://defcad.com/library/ubar2-printable-ar-15-lower-media, archived at https://web.archive.org/web/20260825000917/https://defcad.com/library/ubar2-printable-ar-15-lower-media

91. Each of the 3011, 3011DS, PV3, PCD, and UBAR Postings contains page metadata identifying the posting as a "CreativeWork," identifying TexasRanger as its creator, and separately identifying DEFCAD as its publisher.

## COMPLETED INFRINGEMENTS OF ELIK'S WORKS IN THE REMOVED POSTINGS

92. Before their removal on or about March 31, 2026, the following DEFCAD postings also reproduced and distributed seven independently copyrighted Elik photographs. Those postings contained other material at issue in Larosiere's prior actions, but the seven photographs and Elik's registrations identified here are not the Larosiere-owned works for which those actions sought recovery.

93. The "Amigo Grande posting"[8] contained two Elik photographs registered as VA0002479454: the black Amigo photograph and the muzzle-blast Amigo photograph. On information and belief, the unauthorized copying and distribution occurred while that posting was available before its removal after March 31, 2026.

94. The "SF5 posting"[9] contained one Elik photograph registered as VA0002499003, identified as the SF5 party photograph. On information and belief, Defendants copied and distributed it while the posting was available before its removal after March 31, 2026.

[8] https://defcad.com/library/b04ef13c-b5ba-46a1-8270-f879e9581b1c/, archived at https://web.archive.org/web/20260327180826/https://defcad.com/library/amigo-grande-3d-printable-cetme-c-308-receiver/

[9] https://defcad.com/library/531a3626-c438-455c-a475-7c7a98a69bb2/, archived at https://web.archive.org/web/20260402165212/https://defcad.com/library/the-sf5/

95. The "Plastikov V4 posting"[10] contained two Elik photographs registered as VA0002499003, identified as the Plastikov pileup and Dracos photographs. On information and belief, Defendants copied and distributed them while the posting was available before its removal after March 31, 2026.

96. The "NS3 posting"[11] contained one Elik photograph registered as VA0002498998, identified as the NS3 SF5 photograph. On information and belief, Defendants copied and distributed it while the posting was available before its removal after March 31, 2026.

97. The "BUBAR posting"[12] contained one Elik photograph registered as VA0002498997, identified as the pink BUBAR photograph. On information and belief, Defendants copied and distributed it while the posting was available before its removal after March 31, 2026.

98. Elik did not authorize those uses. He seeks damages and attributable profits for those acts, with statutory remedies to the extent available.

99. Together, the new and removed Elik postings involve eighty unique Elik photographs in 123 placements on Defendants' websites. His claims for the removed photographs are asserted independently of the new-upload claims.

---

[10] https://defcad.com/library/plastikov-v4/, archived at https://web.archive.org/web/20260402165221/https://defcad.com/library/plastikov-v4/

[11] https://defcad.com/library/the-ns3-system/, archived at https://web.archive.org/web/20251102102733/https://defcad.com/library/the-ns3-system/

[12] https://defcad.com/library/e226a55b-7817-49f7-b839-cb65b7f01045/, archived at https://web.archive.org/web/20260327180819/https://defcad.com/library/ivanthetrolls-bubar-10-lr308/

## FALSE COPYRIGHT MANAGEMENT INFORMATION ON THE NEW POSTINGS

100. Each of the seven August 2026 media pages conveys identifying information in connection with the copyrighted works it distributes. The visible page associates a named creator or contributor with the package, and the page's information designates that account as the "creator" of a "CreativeWork," separately identifying DEFCAD as the publisher.

101. For the SF5 Repeat Posting, Defendants supplied ThirdEyeAgent as that creator identity in connection with the SF5 Build Tutorial, fifty SF5 photographs, and ninety-six Amigo Grande photographs.

102. For the 10/22 Repeat Posting, Defendants supplied TexasRanger as that creator identity in connection with the six photographs registered as VA0002449526.

103. For each of the 3011, 3011DS, PV3, PCD, and UBAR Postings, Defendants supplied TexasRanger as the creator identity in connection with the particular Elik photographs and registrations identified in paragraphs 82 through 86.

104. Those designations are false as authorship information concerning Plaintiffs' protected text and photographs. Neither account is the author of those works, and neither owns or is authorized to supply the rights Plaintiffs assert. The false information accompanies the accused works on the very pages from which Defendants invite users to obtain them.

105. Wilson and the employees acting at his direction knew the designations were false. They had access to the original works, knew Plaintiffs' ownership claims and registrations from the earlier litigation and communications, and selected the new account designations themselves regardless.

106. Defendants knowingly supplied and distributed the false creator information with the intent to induce, enable, facilitate, and conceal infringement. They intended the false attribution to make the packages appear supplied by a different creator, obscure the connection to Plaintiffs' asserted rights and removed postings, and encourage users to download and further copy the exact works Defendants knew Plaintiffs had not authorized them to distribute.

107. DEFCAD provided and distributed that information through the pages it operates. Defense Distributed, through personnel acting within their duties and under Wilson's direction, participated in preparing and publishing the packages and their identifying information. Wilson personally selected, approved, or directed the false designations. DD Foundation's responsibility is alleged through Wilson's conduct in operating the entities as the alter egos described above and its knowing participation in the common operation.

108. The false creator information interferes with Plaintiffs' ability to control the distribution and licensing of their works, diverts credit and the associated commercial value, and facilitates continued copying from Defendants' pages. Each Plaintiff has been injured by the false information connected to his own works.

109. Each of the seven new media pages displays "No license" and states that the contributor has not attached a license to the release. Defendants nevertheless invite and deliver downloads.

110. Each of the seven August 2026 media postings states: "Use of these files is governed by the DEFCAD Terms of Service." That statement links the particular files offered for download to DEFCAD's Terms of Service, available at https://defcad.com/terms-of-service.

111. Section 2.2 of those Terms provides that uploading material grants DEFCAD a perpetual, irrevocable, worldwide, nonexclusive license to reproduce, distribute, display, and prepare derivative works from the material, and to authorize sublicenses. It also requires the uploader to represent that the uploader owns or controls the rights necessary to grant that license.

112. Section 3.0 presents the products marketed through DEFCAD as "made available solely for license" and directs customers to comply with the applicable licensing terms.

113. By publishing Plaintiffs' works on pages expressly subjecting their use to those Terms, Defendants represented that DEFCAD had acquired the rights necessary to reproduce and distribute those works and to authorize their use by customers. That representation accompanied the particular copies offered through the SF5 Repeat Posting, 10/22 Repeat Posting, 3011 Posting, 3011DS Posting, PV3 Posting, PCD Posting, and UBAR Posting.

114. Those representations were false. Plaintiffs had not granted the rights necessary for DEFCAD to make the challenged reproductions and distributions or to sublicense the identified works. Neither the persons using the ThirdEyeAgent and TexasRanger accounts nor the personnel responsible for these uploads possessed authority to grant those rights on Plaintiffs' behalf.

115. On information and belief, Wilson and personnel acting at his direction selected and uploaded the works and published the accompanying licensing information. They knew from the prior litigation, registrations, and communications described above that the identified rights belonged to Plaintiffs and that Plaintiffs had not authorized these uses.

116. Defendants nevertheless presented the copies as available through DEFCAD's licensing arrangement to induce customers to obtain and use them as authorized copies. Defendants knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence of permission from the respective copyright owners.

117. The statement that no contributor license is attached does not disclose that DEFCAD lacks the separately represented authority to supply Plaintiffs' works under its own licensing arrangement. The false information alleged here concerns that affirmative representation of authority, made through the work-specific pages and their express incorporation of the Terms.

**WILLFULNESS AND THE THREAT OF CONTINUED VIOLATIONS**

118. Defendants knew of Plaintiffs' copyrights before the new postings. Wilson and the Business Entity Defendants had litigated Larosiere's ownership and registration claims in the earlier cases and had received Elik's separate copyright counterclaims and notice of additional registrations. Their new publications copied protected literary and photographic expression.

119. At his March 17, 2026 deposition in *Larosiere v. Wilson*, Wilson read a November 25, 2024 Slack message from a username he acknowledged was his: "Where we talk about their registrations, we accuse them of fraud."

120. At the same deposition, Wilson also testified that he had already seen Larosiere's registrations because he had been served with the lawsuit. Wilson Dep. 292:19–293:15.

121. In the same examination, Wilson described the agreements, litigation, and works as fraudulent, stating: "It's fake. Fake lawsuit, fake lawyers, fake agreements, fake file, fake copy." He continued: "Lawsuits brought without evidence, without real plaintiffs, without real claims, without real damages. Fake all the way through." Wilson Dep. 293:22–294:14.

122. Wilson further testified: "Even the property at issue is fake, and insubstantial and without commercial reality. It is so fake there are fake levels of how fake it is. Even the news about it is fake. It is a cake of fraud." Wilson Dep. 294:17 21.

123. When asked, "So why didn't you just stop publishing them when you were sued?", Wilson answered "This bridge has to be crossed. It might as well be

crossed with this Plaintiff and this attorney [before Venable does it] or something. It's an important question of law." Wilson Dep. 295:25–296:13.[13]

124. Defendants' knowledge of Larosiere's copyright claims was reflected in their tracking of those claims through FedCAD.com. During the earlier litigation, that website displayed registration information concerning the Amigo Grande and SF5 works.

125. On or about May 4, 2025, Walliman updated the FedCAD.com website to identify pending registrations concerning the 10/22 works, including the photographs subsequently registered as VA0002449526. These were among the copyrighted works later reproduced in the August 2026 media postings.

126. At his March 17, 2026 deposition, Wilson initially denied creating and operating FedCAD.com. Asked what FedCAD.com was, he answered, "I don't know," and then, "It sounds like a website." He subsequently acknowledged awareness of the website but claimed only vague familiarity and denied owning, building, controlling, or directing it. Wilson Dep. 238:7–239:2.

127. Wilson nevertheless described FedCAD.com as "some snarky attempt to trace or record copyrighted works" and identified Garret Walliman as its operator. Wilson Dep. 240:10–19.

[13] The bracketed language corrects the transcript's rendering of "for a vendable buzz or something" at 296:9 to reflect the words audible in the deposition audio recording.

128. Although he denied Defense Distributed's control of the FedCAD.com website, Wilson admitted that Defense Distributed registered its domain. Wilson Dep. 243:3–8.

129. In Wilson's own manifesto, Black Flag White Paper, Wilson expressly announced FedCAD.com and described its purpose: "I announce FedCAD.com. Let it be a place for respecting and contacting all 3D gun rightsholders. Let it serve as a reminder that in this movement the only possible theft is property." When confronted with that passage after his denial of knowledge and asked whether he authored it, Wilson answered, "I wrote it. Authorship is a heavy word." Wilson Dep. 250:18–251:2.

130. Asked what he meant by the announcement, Wilson responded: "The 'I' in this section is not the 'I' who authored the work." When asked whether the "I" referred to him, Wilson rejected that interpretation as "a radical vulgar simplification of what is clearly a literary attempt to explain the law of copyright." Wilson Dep. 251:3–17.

131. Wilson then attempted to separate himself from the announcement he acknowledged writing himself, explaining, "I first dislocate the announcement from myself." He continued: "FedCAD.com gets announced here. There's no question about that. But, of course, I didn't create FedCAD.com. I didn't announce it." Wilson Dep. 252:1–8. Thus, although Wilson professed ignorance of FedCAD.com and denied announcing it, he acknowledged writing the passage that expressly

announced the website prior to its publication and described its purpose as a place for "respecting and contacting" copyright holders.

132. While the FedCAD.com website did have buttons to "contact" the rightsholder, the buttons did not, in fact, contact the rightsholder. Rather, they led to a fillable form, which, upon submission, would send the information to Wilson and/or Walliman.

133. The contemporaneous tracking of the copyright claims and Wilson's written announcement further demonstrate that the August 2026 publications occurred with actual notice of Plaintiffs' asserted rights.

134. Together with the earlier litigation, identification of the registered works, and removal of the previous postings, these facts establish that the new publications were deliberate republications after notice, rather than inadvertent copying of unidentified materials.

135. On information and belief, Wilson and the personnel acting at his direction knowingly selected and republished the identified literary and photographic works despite their knowledge that Larosiere had not authorized those uses.

136. Wilson has publicly promoted opposition to Plaintiffs' copyright enforcement through his companies' blogs and a manifesto. A May 24, 2024 DDLegio post stated, "The reason you don't sue is because you got the law wrong on copyright, that and because you're a huge pussy", and described pirates as having "pillaged so we could plunder."

137. On or about June 12, 2024, Wilson sent or caused Defense Distributed to send Elik a package containing a book and a black-spot bookmark. Plaintiffs allege that, in the context of Wilson's campaign against Elik and copyright enforcement, the package conveyed a death threat intended to intimidate Elik and deter him from pursuing his rights.

138. Wilson also published or caused the publication of personal information about Elik and taunts directed at his ability to pursue legal relief. In September 2024, Wilson revived an earlier communication concerning Elik's personal information and security clearance and testified that the communication was occasioned by Elik's decision to prosecute a lawsuit against him. Wilson Dep. 278:11 279:12.

139. Wilson also used the Business Entity Defendants' commercial publications to target Plaintiffs personally. On June 30, 2025, DEFCAD published a newsletter entitled "Triton-9, GR2, and Pride Month." Its discussion of Plaintiffs' podcast identified Larosiere and Elik and portrayed their professional collaboration through sexualized descriptions of a purported intimate homosexual relationship. These attacks appeared within a DEFCAD newsletter that also promoted releases of digital media and carried commercial advertising.

140. The article concluded its discussion of Plaintiffs with allusions to their deaths. It invoked Kerouac's writing and quoted "a face just covers a skull awhile." It then returned expressly to Plaintiffs' podcast, stating that "we are headed so straight for the grave" and concluding with "stretch that skull-cover and smile."

These references appeared in the same passage identifying Plaintiffs by name and sexualizing their professional collaboration.

141. On September 29, 2025, Defense Distributed published "What Happened to FOSSCAD?" through DDLegio. The post referred to the "John Elik Gang," linked to the Southern District Action, and invoked Larosiere through the Fuddbuster name. It threatened a "ticket to a rough ride," alluded to the "death of the author," and included a poem suggesting Elik's death. The post concluded by soliciting LEGIO memberships to support the publisher's "legal actions."

142. On information and belief, Wilson wrote or directed these publications through DEFCAD and Defense Distributed. He used their publication channels both to pursue his personal campaign against Plaintiffs and to solicit attention and financial support for the businesses through which the challenged copying occurred. Those publications form part of the course of conduct culminating in the August 2026 newsletter and renewed dissemination alleged here.

143. Defendants' prior notice, removal of the earlier postings, new publications of the same protected works, false creator designations, harassment campaigns, and efforts to obfuscate his own dissemination of Plaintiffs' works show deliberate conduct rather than inadvertent copying.

144. Wilson's direction of that conduct supplies a basis for his personal liability independent of his corporate positions.

145. Defendants have the ability to stop the challenged copying and false-information publication but have continued the new postings. Their practice of

removing material and then republishing it under new pages or identities creates a substantial threat of repetition, including as to the removed Elik photographs. Monetary relief alone cannot restore Plaintiffs' control over ongoing dissemination or prevent renewed violations.

146. After removing the works following settlement of *Larosiere v. Wilson* and *Larosiere v. Wilson II*, Wilson and the personnel acting at his direction caused the same protected text and photographs to be reproduced in newly created media packages, published at different URLs and associated with the ThirdEyeAgent and TexasRanger identities. The new packages also included the separately owned Elik photographs identified in this complaint. The seven new media postings remained available when inspected in September 2026.

147. The new pages continue to offer the identified works together with the false creator and licensing information alleged here to Defendants' 150,000 subscribers.

148. An award addressing completed copying would not stop the ongoing delivery of additional copies or correct the continuing false information accompanying them. Plaintiffs therefore seek prospective relief against continued and renewed unauthorized reproduction and distribution of their identified works and the knowing provision and distribution of the false copyright management information alleged here.

**ELIK'S COMMERCIAL IDENTITY AND THE IVANTHETROLL ACCOUNT**

149. Elik uses the pseudonym IvanTheTroll in connection with his design, authorship, and related professional activities. Through his continuing public use and the recognition of his work, the name has acquired source-identifying significance and goodwill associated with Elik.

150. Around 2020, Wilson's employee Garret Walliman created the DEFCAD profile IvanTheTroll and provided Elik with the login credentials. The account was initially presented as Elik's account with Elik's participation.

151. On August 4, 2022, Elik directed Walliman and Wilson to delete the IvanTheTroll account itself, everything associated with it, and any archived versions. That instruction withdrew any permission that may have existed for Defendants to continue operating or presenting the account as Elik's authorized participation in their service.

152. Defendants did not comply with Elik's August 4 instruction. Instead, Wilson and personnel acting at his direction removed Elik's ability to log into the account and began operating it themselves while retaining the public presentation of an account belonging to Elik. Elik did not authorize that takeover or the subsequent use of his identity.

153. The IvanTheTroll account remains public.[14] As inspected in September 2026, it displays IvanTheTroll, the handle @IvanTheTroll, a profile image, a Follow button, follower and activity counts, an About section manifestly written by

[14] https://defcad.com/users/IvanTheTroll, archived at https://web.archive.org/web/20251104051047/https://defcad.com/users/IvanTheTroll/

Defendants, and a creator-content tab listing twenty-two projects. It does not disclose that Elik withdrew its authorization.

154. The profile lists, and the corresponding detail pages link back to IvanTheTroll for, the original 3011, 3011 Double Stack, Plastikov v3, UBAR2, Printable Case Deflector, and Ivan's 10/22 listings.

155. For example, https://defcad.com/library/printable-case-deflector-ar15 displays a release date of December 15, 2022, and a current-version date of October 9, 2023. Its title is accompanied by the IvanTheTroll profile link. Both dates postdate Elik's August 4, 2022 deletion instruction.

156. Similarly, https://defcad.com/library/3011-double-stack displays a release date of January 29, 2023, and a current-version date of October 9, 2023, while linking the project to IvanTheTroll. Defendants thereby continued presenting new project activity under Elik's identity after denying him access.

157. The same profile also lists "Protocols of the Learned Elders of Gatalog," [15] with a November 2025 release date, and "California Gatalog Jurisdictional Discovery Order,"[16] dated June 14, 2026. Both detail pages link to IvanTheTroll. Protocols discusses Elik adversely in the third person and also appears on the TexasRanger profile. These examples show Defendants' continued assignment of publications to the account.

[15] https://defcad.com/library/protocols-of-the-learned-elders-of-gatalog-1, archived at https://web.archive.org/web/20251108093912/https://defcad.com/library/protocols-of-the-learned-elders-of-gatalog-1/

[16] https://defcad.com/library/ca-gatalog-discovery-order, archived at https://web.archive.org/web/20260919041536/https://defcad.com/library/ca-gatalog-discovery-order

158. DEFCAD also uses the IvanTheTroll identity in website promotion. Its homepage's Popular Projects section presents Menendez Magazine v2.0 Pack with a link labeled IvanTheTroll. The account and associated project pages attract users to Defendants' file sharing business, memberships, and related commercial offerings.

159. By retaining and operating the IvanTheTroll account, presenting projects as its current activity, inviting users to follow it, and using the account in commercial promotion without disclosing Elik's exclusion, Defendants falsely represent that Elik continues to participate in, sponsor, approve, or authorize that account's operation and associated offerings.

160. The exact use of Elik's established professional identity and the absence of an account-control disclosure are likely to cause users familiar with Elik's work to believe the account remains his authorized presence on DEFCAD. The misleading representation concerns an ongoing commercial relationship.

161. Wilson received the deletion instruction, directed or approved Elik's exclusion, and caused the continued identity use. DEFCAD maintained the account, its project associations, and promotional displays.

162. On information and belief, Defense Distributed's personnel, including Walliman acting within his duties, carried out the account administration and used the account's draw to promote the associated membership operation.

163. DD Foundation's liability is asserted through its knowing participation in that operation under Wilson and the alter-ego conduct alleged above.

164. The false association deprives Elik of control over his commercial identity and reputation, associates him with publications and services he does not approve, and diverts the commercial value of his recognized identity to Defendants' business. It damages his goodwill and professional relationships and is likely to continue doing so unless enjoined.

## FIRST CAUSE OF ACTION: COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501

### COUNT 1
### COPYRIGHT INFRINGEMENT BROUGHT BY LAROSIERE AGAINST DEFCAD, INC.

165. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

166. Larosiere owns the registered works specifically infringed by DEFCAD, Inc.: the SF5 Build Tutorial (TX0009372196), fifty photographs (VA0002381769), and ninety-six photographs (VA0002381513), in the SF5 Repeat Posting; and six photographs (VA0002449526) in the 10/22 Repeat Posting. This count concerns reproduction and distribution beginning on or about August 22, 2026, after the earlier cessation.

167. DEFCAD, through the employees and agents operating its website, selected and reproduced Larosiere's works in the identified packages and distributed copies to users. These were affirmative acts of publication and distribution.

168. Larosiere did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Larosiere's exclusive rights under 17 U.S.C. § 106(1) and (3). DEFCAD, Inc.'s conduct was knowing and willful for the reasons incorporated into this count.

169. Larosiere has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Larosiere also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

**COUNT 2**
**COPYRIGHT INFRINGEMENT BROUGHT BY LAROSIERE AGAINST DEFENSE DISTRIBUTED**

170. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

171. Larosiere owns the registered works specifically infringed by Defense Distributed: the SF5 Build Tutorial (TX0009372196), fifty photographs (VA0002381769), and ninety-six photographs (VA0002381513) in the SF5 Repeat Posting; and six photographs (VA0002449526) in the 10/22 Repeat Posting. This count concerns reproduction and distribution beginning on or about August 22, 2026, after the earlier cessation.

172. Defense Distributed, through employees acting within the scope of their duties and at Wilson's direction, participated in preparing, reproducing, and publishing the identified copies of Larosiere's works through the DEFCAD

operation. Defense Distributed also received monetary proceeds from the complained-of conduct. Its participation and liability also arise from the alleged alter-ego operation, independently of its status as a related entity.

173. Larosiere did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Larosiere's exclusive rights under 17 U.S.C. § 106(1) and (3). Defense Distributed's conduct was knowing and willful for the reasons specifically incorporated into this count.

174. Larosiere has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Larosiere also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

## COUNT 3
## COPYRIGHT INFRINGEMENT BROUGHT BY LAROSIERE AGAINST DD FOUNDATION LLC

175. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

176. Larosiere owns the registered works specifically infringed by DD Foundation LLC: the SF5 Build Tutorial (TX0009372196), fifty photographs (VA0002381769), and ninety-six photographs (VA0002381513) in the SF5 Repeat Posting; and six photographs (VA0002449526) in the 10/22 Repeat Posting. This count concerns reproduction and distribution beginning on or about August 22, 2026, after the earlier cessation.

177. Wilson committed and directed the identified reproduction and distribution of Larosiere's works through the integrated operation in which DD Foundation knowingly participated. Plaintiffs allege, on information and belief, that Wilson acted for and on behalf of DD Foundation as its controlling agent in that participation, as well as for the other entities. DD Foundation also received monetary proceeds from the complained-of conduct. Alternatively, Plaintiffs seek to impose responsibility on DD Foundation through the alter-ego facts incorporated here.

178. Larosiere did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Larosiere's exclusive rights under 17 U.S.C. § 106(1) and (3). DD Foundation LLC's conduct was knowing and willful for the reasons incorporated into this count.

179. Larosiere has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Larosiere also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

## COUNT 4
## COPYRIGHT INFRINGEMENT BROUGHT BY LAROSIERE AGAINST CODY RUTLEDGE WILSON

180. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

181. Larosiere owns the registered works specifically infringed by Cody Rutledge Wilson: the SF5 Build Tutorial (TX0009372196), fifty photographs (VA0002381769), and ninety-six photographs (VA0002381513) in the SF5 Repeat Posting; and six photographs (VA0002449526) in the 10/22 Repeat Posting. This count concerns reproduction and distribution beginning on or about August 22, 2026, after the earlier cessation.

182. Wilson personally made or knowingly directed and caused the identified reproductions and distributions of Larosiere's works, using employees and entities under his control. His personal participation and direction are alleged independently of his additional responsibility for conduct through his corporate alter egos.

183. Larosiere did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Larosiere's exclusive rights under 17 U.S.C. § 106(1) and (3). Cody Rutledge Wilson's conduct was knowing and willful for the reasons incorporated into this count.

184. Larosiere has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Larosiere also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

**COUNT 5**
**COPYRIGHT INFRINGEMENT BROUGHT BY ELIK AGAINST DEFCAD, INC.**

185. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 100, and 103 through 148 inclusive, as if fully set forth here.

186. Elik owns the registered photographs specifically infringed by DEFCAD, Inc. in the August 2026 postings: the 3011 Posting (one under VA0002479454 and forty-four under VA0002499002); the 3011DS Posting (forty-three under VA0002499002 and three under VA0002498997); the PV3 Posting (two under VA0002479454 and twenty-one under VA0002498997); the PCD Posting (one under VA0002498997); and the UBAR Posting (one under VA0002479454).

187. This count also concerns DEFCAD, Inc.'s completed infringement of Elik's photographs in the removed Amigo Grande posting (two under VA0002479454), SF5 posting (one under VA0002499003), Plastikov V4 posting (two under VA0002499003), NS3 posting (one under VA0002498998), and BUBAR posting (one under VA0002498997).

188. DEFCAD, through the employees and agents operating its website, selected and reproduced Elik's works in the identified packages and distributed copies to users. These were affirmative acts of publication and distribution.

189. Elik did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Elik's exclusive rights under 17 U.S.C. § 106(1) and (3). DEFCAD, Inc.'s conduct was knowing and willful for the reasons incorporated into this count.

190. Elik has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Elik also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

**COUNT 6**
**COPYRIGHT INFRINGEMENT BROUGHT BY ELIK AGAINST DEFENSE DISTRIBUTED**

191. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 100, and 103 through 148 inclusive, as if fully set forth here.

192. Elik owns the registered photographs specifically infringed by Defense Distributed in the August 2026 postings: the 3011 Posting (one under VA0002479454 and forty-four under VA0002499002); the 3011DS Posting (forty-three under VA0002499002 and three under VA0002498997); the PV3 Posting (two under VA0002479454 and twenty-one under VA0002498997); the PCD Posting (one under VA0002498997); and the UBAR Posting (one under VA0002479454).

193. This count also concerns Defense Distributed's completed infringement of Elik's photographs in the removed Amigo Grande posting (two under VA0002479454), SF5 posting (one under VA0002499003), Plastikov V4 posting (two under VA0002499003), NS3 posting (one under VA0002498998), and BUBAR posting (one under VA0002498997).

194. Defense Distributed, through employees acting within the scope of their duties and at Wilson's direction, participated in preparing, reproducing, and publishing the identified copies of Elik's works through the DEFCAD operation.

Defense Distributed also received monetary proceeds from the complained-of conduct. Its participation and liability also arise from the specifically alleged alter-ego operation, independently of its status as a related entity.

195. Elik did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Elik's exclusive rights under 17 U.S.C. § 106(1) and (3). Defense Distributed's conduct was knowing and willful for the reasons incorporated into this count.

196. Elik has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Elik also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

## COUNT 7
## COPYRIGHT INFRINGEMENT BROUGHT BY ELIK AGAINST DD FOUNDATION LLC

197. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 100, and 103 through 148 inclusive, as if fully set forth here.

198. Elik owns the registered photographs specifically infringed by DD Foundation LLC in the August 2026 postings: the 3011 Posting (one under VA0002479454 and forty-four under VA0002499002); the 3011DS Posting (forty-three under VA0002499002 and three under VA0002498997); the PV3 Posting (two under VA0002479454 and twenty-one under VA0002498997); the PCD Posting (one under VA0002498997); and the UBAR Posting (one under VA0002479454).

199. This count also concerns DD Foundation LLC's completed infringement of Elik's photographs in the removed Amigo Grande posting (two under VA0002479454), SF5 posting (one under VA0002499003), Plastikov V4 posting (two under VA0002499003), NS3 posting (one under VA0002498998), and BUBAR posting (one under VA0002498997).

200. Wilson committed and directed the identified reproduction and distribution of Elik's works through the integrated operation in which DD Foundation knowingly participated. Plaintiffs allege, on information and belief, that Wilson acted for and on behalf of DD Foundation as its controlling agent in that participation, as well as for the other entities. DD Foundation also received monetary proceeds from the complained-of conduct. Alternatively, Plaintiffs seek to impose responsibility on DD Foundation through the alter-ego facts incorporated here.

201. Elik did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Elik's exclusive rights under 17 U.S.C. § 106(1) and (3). DD Foundation LLC's conduct was knowing and willful for the reasons incorporated into this count.

202. Elik has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Elik also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

**COUNT 8**
**COPYRIGHT INFRINGEMENT BROUGHT BY ELIK AGAINST CODY RUTLEDGE WILSON**

203. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 100, and 103 through 148 inclusive, as if fully set forth here.

204. Elik owns the registered photographs specifically infringed by Cody Rutledge Wilson in the August 2026 postings: the 3011 Posting (one under VA0002479454 and forty-four under VA0002499002); the 3011DS Posting (forty-three under VA0002499002 and three under VA0002498997); the PV3 Posting (two under VA0002479454 and twenty-one under VA0002498997); the PCD Posting (one under VA0002498997); and the UBAR Posting (one under VA0002479454). The relevant URLs and duplicated-image relationship are identified in paragraphs 69 through 76.

205. This count also concerns Cody Rutledge Wilson's completed infringement of Elik's photographs in the removed Amigo Grande posting (two under VA0002479454), SF5 posting (one under VA0002499003), Plastikov V4 posting (two under VA0002499003), NS3 posting (one under VA0002498998), and BUBAR posting (one under VA0002498997).

206. Wilson personally made or knowingly directed and caused the identified reproductions and distributions of Elik's works, using employees and entities under his control. His personal participation and direction are alleged independently of his additional responsibility for conduct through his corporate alter egos.

207. Elik did not authorize those uses. The accused copies reproduce the protected expression in the registered works and violate Elik's exclusive rights under 17 U.S.C. § 106(1) and (3). Cody Rutledge Wilson's conduct was knowing and willful for the reasons incorporated into this count.

208. Elik has suffered injury and seeks actual damages and profits attributable to the infringement under 17 U.S.C. § 504(b), or, for works and infringements eligible under § 412, statutory damages under § 504(c), including enhancement for willfulness. Elik also seeks appropriate relief under §§ 502 and 503 and costs and reasonable attorney's fees under § 505.

## SECOND CAUSE OF ACTION: FALSE COPYRIGHT MANAGEMENT INFORMATION UNDER 17 U.S.C. § 1202(a)

### COUNT 9
### FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY LAROSIERE AGAINST DEFCAD, INC.

209. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

210. This count concerns the false designations of ThirdEyeAgent as creator in connection with TX0009372196, the fifty VA0002381769 photographs, and the ninety-six VA0002381513 photographs in the SF5 Repeat Posting, and TexasRanger as creator in connection with the six VA0002449526 photographs in the 10/22 Repeat Posting. The designations are information identifying the supposed author, supplied in connection with copies of Larosiere's works, within 17 U.S.C. § 1202(c)(2).

211. DEFCAD knowingly provided and distributed that false information through the project pages and their creator designations, acting through the personnel who selected and published the information. DEFCAD, Inc. knew that the named account was not the author or owner of Larosiere's protected expression.

212. DEFCAD, Inc. acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Larosiere's rights, making the repackaged copies appear supplied by a different creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

213. This count also concerns the false licensing information supplied with the same Larosiere Works identified in this count: the SF5 Build Tutorial registered as TX0009372196, the fifty photographs registered as VA0002381769, and the ninety-six photographs registered as VA0002381513 in the SF5 Repeat Posting; and the six photographs registered as VA0002449526 in the 10/22 Repeat Posting. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and sublicense these works. Larosiere had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant it on his behalf. The represented terms and conditions for use of these works, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

214. DEFCAD, Inc. knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, DEFCAD, Inc. knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

215. Larosiere was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Larosiere seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

**COUNT 10**
**FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY LAROSIERE AGAINST DEFENSE DISTRIBUTED**

216. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

217. This count concerns the false designations of ThirdEyeAgent as creator in connection with TX0009372196, the fifty VA0002381769 photographs, and the ninety-six VA0002381513 photographs in the SF5 Repeat Posting, and TexasRanger as creator in connection with the six VA0002449526 photographs in the 10/22

Repeat Posting. The designations are information identifying the supposed author, supplied in connection with copies of Larosiere's works, within 17 U.S.C. § 1202(c)(2).

218. Defense Distributed knowingly participated, through its personnel acting within their duties and under Wilson's direction, in providing and distributing that false information with the identified packages. Defense Distributed also received monetary proceeds from the complained-of conduct. It is also responsible through the specifically alleged alter-ego operation. Defense Distributed knew that the named account was not the author or owner of Larosiere's protected expression.

219. Defense Distributed acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Larosiere's rights, making the repackaged copies appear supplied by a different creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

220. This count also concerns the false licensing information supplied with the same Larosiere Works identified in this count: the SF5 Build Tutorial registered as TX0009372196, the fifty photographs registered as VA0002381769, and the ninety-six photographs registered as VA0002381513 in the SF5 Repeat Posting; and the six photographs registered as VA0002449526 in the 10/22 Repeat Posting. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and

sublicense these works. Larosiere had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant it on his behalf. The represented terms and conditions for use of these works, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

221. Defense Distributed knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, Defense Distributed knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

222. Larosiere was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Larosiere seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

**COUNT 11**
**FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY LAROSIERE AGAINST DD FOUNDATION LLC**

223. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

224. This count concerns the false designations of ThirdEyeAgent as creator in connection with TX0009372196, the fifty VA0002381769 photographs, and the ninety-six VA0002381513 photographs in the SF5 Repeat Posting, and TexasRanger as creator in connection with the six VA0002449526 photographs in the 10/22 Repeat Posting. The designations are information identifying the supposed author, supplied in connection with copies of Larosiere's works, within 17 U.S.C. § 1202(c)(2).

225. On information and belief, Wilson acted for and on behalf of DD Foundation as its controlling agent when directing its participation in the knowing provision and distribution of the identified false information. DD Foundation also received monetary proceeds from the complained-of conduct. Alternatively, responsibility is alleged through the alter-ego facts incorporated here. DD Foundation LLC knew that the named account was not the author or owner of Larosiere's protected expression.

226. DD Foundation LLC acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Larosiere's rights, making the repackaged copies appear supplied by a different

creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

227. This count also concerns the false licensing information supplied with the same Larosiere Works identified in this count: the SF5 Build Tutorial registered as TX0009372196, the fifty photographs registered as VA0002381769, and the ninety-six photographs registered as VA0002381513 in the SF5 Repeat Posting; and the six photographs registered as VA0002449526 in the 10/22 Repeat Posting. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and sublicense these works. Larosiere had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant it on his behalf. The represented terms and conditions for use of these works, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

228. DD Foundation LLC knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, DD Foundation LLC knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

229. Larosiere was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Larosiere seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

**COUNT 12**
**FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY LAROSIERE AGAINST CODY RUTLEDGE WILSON**

230. Plaintiff incorporates paragraphs 1 through 2, 4 through 53, 55 through 56, 60 through 75, 100 through 102, and 104 through 148 inclusive, as if fully set forth here.

231. This count concerns the false designations of ThirdEyeAgent as creator in connection with TX0009372196, the fifty VA0002381769 photographs, and the ninety-six VA0002381513 photographs in the SF5 Repeat Posting, and TexasRanger as creator in connection with the six VA0002449526 photographs in the 10/22 Repeat Posting. The designations are information identifying the supposed author, supplied in connection with copies of Larosiere's works, within 17 U.S.C. § 1202(c)(2).

232. Wilson knowingly provided, approved, directed, and caused the provision and distribution of that false information, personally and through the employees and alter-ego entities he controlled. Cody Rutledge Wilson knew that the named account was not the author or owner of Larosiere's protected expression.

233. Cody Rutledge Wilson acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Larosiere's rights, making the repackaged copies appear supplied by a different creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

234. This count also concerns the false licensing information supplied with the same Larosiere Works identified in this count: the SF5 Build Tutorial registered as TX0009372196, the fifty photographs registered as VA0002381769, and the ninety-six photographs registered as VA0002381513 in the SF5 Repeat Posting; and the six photographs registered as VA0002449526 in the 10/22 Repeat Posting. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and sublicense these works. Larosiere had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant it on his behalf. The represented terms and conditions for use of these works, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

235. Cody Rutledge Wilson knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, Cody Rutledge Wilson knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence

of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

236. Larosiere was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Larosiere seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

**COUNT 13**
**FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY ELIK AGAINST DEFCAD, INC.**

237. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 79, 82 through 91, 100, and 103 through 148 inclusive, as if fully set forth here.

238. This count concerns the false designations of TexasRanger as creator in connection with Elik's photographs in the 3011 Posting (VA0002479454 and VA0002499002), 3011DS Posting (VA0002499002 and VA0002498997), PV3 Posting (VA0002479454 and VA0002498997), PCD Posting (VA0002498997), and UBAR Posting (VA0002479454), in the quantities identified above. The designations are information identifying the supposed author, supplied in connection with copies of Elik's works, within 17 U.S.C. § 1202(c)(2).

239. DEFCAD knowingly provided and distributed that false information through the project pages and their creator designations, acting through the

personnel who selected and published the information. DEFCAD, Inc. knew that the named account was not the author or owner of Elik's protected expression.

240. DEFCAD, Inc. acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Elik's rights, making the repackaged copies appear supplied by a different creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

241. This count also concerns the false licensing information supplied with the same Elik photographs identified in this count in the 3011 Posting, 3011DS Posting, PV3 Posting, PCD Posting, and UBAR Posting, under registrations VA0002479454, VA0002499002, and VA0002498997, in the respective allocations alleged above. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and sublicense those photographs. Elik had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant it on his behalf. The represented terms and conditions for use of these photographs, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

242. DEFCAD, Inc. knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, DEFCAD, Inc. knowingly provided and distributed the false licensing information with the intent to facilitate

unauthorized reproduction and distribution and to conceal the absence of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

243. Elik was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Elik seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

**COUNT 14**
**FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY ELIK AGAINST DEFENSE DISTRIBUTED**

244. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 79, 82 through 91, 100, and 103 through 148 inclusive, as if fully set forth here.

245. This count concerns the false designations of TexasRanger as creator in connection with Elik's photographs in the 3011 Posting (VA0002479454 and VA0002499002), 3011DS Posting (VA0002499002 and VA0002498997), PV3 Posting (VA0002479454 and VA0002498997), PCD Posting (VA0002498997), and UBAR Posting (VA0002479454), in the quantities identified above. The designations are information identifying the supposed author, supplied in connection with copies of Elik's works, within 17 U.S.C. § 1202(c)(2).

246. Defense Distributed knowingly participated, through its personnel acting within their duties and under Wilson's direction, in providing and

distributing that false information with the identified packages. Defense Distributed also received monetary proceeds from the complained-of conduct. It is also responsible through the specifically alleged alter-ego operation. Defense Distributed knew that the named account was not the author or owner of Elik's protected expression.

247. Defense Distributed acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Elik's rights, making the repackaged copies appear supplied by a different creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

248. This count also concerns the false licensing information supplied with the same Elik photographs identified in this count in the 3011 Posting, 3011DS Posting, PV3 Posting, PCD Posting, and UBAR Posting, under registrations VA0002479454, VA0002499002, and VA0002498997, in the respective allocations alleged above. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and sublicense those photographs. Elik had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant it on his behalf. The represented terms and conditions for use of these photographs, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

249. Defense Distributed knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, Defense Distributed knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

250. Elik was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Elik seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

**COUNT 15**
**FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY ELIK AGAINST DD FOUNDATION LLC**

251. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 79, 82 through 91, 100, and 103 through 148 inclusive, as if fully set forth here.

252. This count concerns the false designations of TexasRanger as creator in connection with Elik's photographs in the 3011 Posting (VA0002479454 and VA0002499002), 3011DS Posting (VA0002499002 and VA0002498997), PV3 Posting (VA0002479454 and VA0002498997), PCD Posting (VA0002498997), and UBAR Posting (VA0002479454), in the quantities identified above. The designations are

information identifying the supposed author, supplied in connection with copies of Elik's works, within 17 U.S.C. § 1202(c)(2).

253. On information and belief, Wilson acted for and on behalf of DD Foundation as its controlling agent when directing its participation in the knowing provision and distribution of the identified false information. DD Foundation also received monetary proceeds from the complained-of conduct. Alternatively, responsibility is alleged through the specific misuse, commingling, diversion, and instrumentality facts incorporated here. DD Foundation LLC knew that the named account was not the author or owner of Elik's protected expression.

254. DD Foundation LLC acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Elik's rights, making the repackaged copies appear supplied by a different creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

255. This count also concerns the false licensing information supplied with the same Elik photographs identified in this count in the 3011 Posting, 3011DS Posting, PV3 Posting, PCD Posting, and UBAR Posting, under registrations VA0002479454, VA0002499002, and VA0002498997, in the respective allocations alleged above. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and sublicense those photographs. Elik had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant

it on his behalf. The represented terms and conditions for use of these photographs, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

256. DD Foundation LLC knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, DD Foundation LLC knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

257. Elik was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Elik seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

**COUNT 16**
**FALSE COPYRIGHT MANAGEMENT INFORMATION BROUGHT BY ELIK AGAINST CODY RUTLEDGE WILSON**

258. Plaintiff incorporates paragraphs 1, 3 through 53, 55 through 63, 76 through 79, 82 through 91, 100, and 103 through 148 inclusive, as if fully set forth here.

259. This count concerns the false designations of TexasRanger as creator in connection with Elik's photographs in the 3011 Posting (VA0002479454 and

VA0002499002), 3011DS Posting (VA0002499002 and VA0002498997), PV3 Posting (VA0002479454 and VA0002498997), PCD Posting (VA0002498997), and UBAR Posting (VA0002479454), in the quantities identified above. The designations are information identifying the supposed author, supplied in connection with copies of Elik's works, within 17 U.S.C. § 1202(c)(2).

260. Wilson knowingly provided, approved, directed, and caused the provision and distribution of that false information, personally and through the employees and alter-ego entities he controlled. Cody Rutledge Wilson knew that the named account was not the author or owner of Elik's protected expression.

261. Cody Rutledge Wilson acted with the intent to induce, enable, facilitate, and conceal infringement of the identified works by obscuring their connection to Elik's rights, making the repackaged copies appear supplied by a different creator, and encouraging their unauthorized acquisition and further copying. These acts violate 17 U.S.C. § 1202(a)(1) and (2).

262. This count also concerns the false licensing information supplied with the same Elik photographs identified in this count in the 3011 Posting, 3011DS Posting, PV3 Posting, PCD Posting, and UBAR Posting, under registrations VA0002479454, VA0002499002, and VA0002498997, in the respective allocations alleged above. The pages' express application of DEFCAD's Terms of Service, including §§2.2 and 3.0, falsely represented that DEFCAD possessed authority to reproduce, distribute, and sublicense those photographs. Elik had granted no such authority for the challenged uses, and the uploaders possessed no authority to grant

it on his behalf. The represented terms and conditions for use of these photographs, and the links conveying that information with the copies, constitute copyright management information under 17 U.S.C. §1202(c)(6) and (7).

263. Cody Rutledge Wilson knew that DEFCAD lacked the represented licensing authority over the Plaintiff's works identified in this count. Through the acts and agency relationships specifically alleged here, Cody Rutledge Wilson knowingly provided and distributed the false licensing information with the intent to facilitate unauthorized reproduction and distribution and to conceal the absence of authorization. Presenting the copies as available through a valid licensing arrangement encouraged customers to obtain and use them without permission from the Plaintiff. This conduct violates 17 U.S.C. §1202(a)(1) and (2).

264. Elik was injured by the loss of control and commercial value resulting from the false authorship and licensing information and the copying it facilitated. Under 17 U.S.C. § 1203, Elik seeks actual damages and attributable additional profits or elected statutory damages for each proven violation, together with appropriate injunctive relief, costs, and reasonable attorney's fees.

## THIRD CAUSE OF ACTION: FALSE AFFILIATION AND FALSE ENDORSEMENT UNDER 15 U.S.C. § 1125(a)(1)(A)

### COUNT 17
### FALSE AFFILIATION AND FALSE ENDORSEMENT BROUGHT BY ELIK AGAINST DEFCAD, INC.

265. Plaintiff incorporates paragraphs 1, 3, 6 through 37, 40, 46 through 47, 50, 54 through 55, 60, 136 through 142, and 149 through 164 inclusive, as if fully set forth here.

266. Elik has protectable commercial goodwill in the IvanTheTroll identity described above. This count concerns the unauthorized continued presentation of an account as Elik's participation in and approval of Defendants' commercial service.

267. DEFCAD retained and operated the IvanTheTroll account after Elik's August 4, 2022 deletion instruction, denied him access through its administrators, displayed the account and associated project activity as his, and used the identity on project pages and in promotion.

268. DEFCAD, Inc. used Elik's identity in interstate commerce in connection with the file sharing business and related goods and services in a manner likely to cause confusion, mistake, or deception concerning Elik's affiliation, participation, sponsorship, or approval.

269. Elik did not authorize the challenged post-revocation presentation. DEFCAD, Inc. acted knowingly and willfully despite actual notice that Elik demanded deletion and did not authorize continued operation of the account as his presence on the service.

270. That conduct proximately harms Elik's commercial goodwill, professional reputation, and ability to control affiliation with his services, while diverting the value of his identity to Defendants' business. Elik seeks an injunction under 15 U.S.C. § 1116(a) and DEFCAD, Inc.'s attributable profits and Elik's damages under § 1117(a).

## COUNT 18
## FALSE AFFILIATION AND FALSE ENDORSEMENT BROUGHT BY ELIK AGAINST DEFENSE DISTRIBUTED

271. Plaintiff incorporates paragraphs 1, 3, 6 through 37, 40, 46 through 47, 51, 54 through 55, 60, 136 through 142, and 149 through 164 inclusive, as if fully set forth here.

272. Elik has protectable commercial goodwill in the IvanTheTroll identity described above. This count concerns the unauthorized continued presentation of an account as Elik's participation in and approval of Defendants' commercial service.

273. Defense Distributed, through personnel including Walliman acting within their duties and under Wilson's direction, participated in the takeover and continued operation of the IvanTheTroll account and used the identity's commercial draw in the DEFCAD and membership operation. Defense Distributed also received monetary proceeds from the complained-of conduct. Its liability also rests on the specifically alleged alter-ego conduct.

274. Defense Distributed used Elik's identity in interstate commerce in connection with the file sharing business and related goods and services in a manner likely to cause confusion, mistake, or deception concerning Elik's affiliation, participation, sponsorship, or approval.

275. Elik did not authorize the challenged post-revocation presentation. Defense Distributed acted knowingly and willfully despite actual notice that Elik demanded deletion and did not authorize continued operation of the account as his presence on the service.

276. That conduct proximately harms Elik's commercial goodwill, professional reputation, and ability to control affiliation with his services, while diverting the value of his identity to Defendants' business. Elik seeks an injunction under 15 U.S.C. § 1116(a), Defense Distributed's attributable profits and Elik's damages under § 1117(a).

**COUNT 19**
**FALSE AFFILIATION AND FALSE ENDORSEMENT BROUGHT BY ELIK AGAINST DD FOUNDATION LLC**

277. Plaintiff incorporates paragraphs 1, 3, 6 through 37, 40, 46 through 47, 52, 54 through 55, 60, 136 through 142, and 149 through 164 inclusive, as if fully set forth here.

278. Elik has protectable commercial goodwill in the source-identifying IvanTheTroll identity described above. This count concerns the unauthorized continued presentation of an account as Elik's participation in and approval of Defendants' commercial service.

279. On information and belief, Wilson acted for and on behalf of DD Foundation as its controlling agent when directing its knowing participation in the commercial operation using the IvanTheTroll identity. DD Foundation LLC also received monetary proceeds from the complained-of conduct. Alternatively, Elik seeks to impose responsibility through the specific misuse, commingling, diversion, and instrumentality facts incorporated above.

280. DD Foundation LLC used Elik's identity in interstate commerce in connection with the file sharing business and related goods and services in a

manner likely to cause confusion, mistake, or deception concerning Elik's affiliation, participation, sponsorship, or approval.

281. Elik did not authorize the challenged post-revocation presentation. DD Foundation LLC acted knowingly and willfully despite actual notice that Elik demanded deletion and did not authorize continued operation of the account as his presence on the service.

282. That conduct proximately harms Elik's commercial goodwill, professional reputation, and ability to control affiliation with his services, while diverting the value of his identity to Defendants' business. Elik seeks an injunction under 15 U.S.C. § 1116(a), and DD Foundation LLC's attributable profits and Elik's damages under § 1117(a).

**COUNT 20**
**FALSE AFFILIATION AND FALSE ENDORSEMENT BROUGHT BY ELIK AGAINST CODY RUTLEDGE WILSON**

283. Plaintiff incorporates paragraphs 1, 3, 6 through 37, 40, 46 through 47, 53 through 55, 60, 136 through 142, and 149 through 164 inclusive, as if fully set forth here.

284. Elik has protectable commercial goodwill in the source-identifying IvanTheTroll identity described above. This count concerns the unauthorized continued presentation of an account as Elik's participation in and approval of Defendants' commercial service, not a claim that a failure to credit authorship alone violates the Lanham Act.

285. Wilson personally received the deletion instruction, directed or approved Elik's exclusion from the account, and directed the continued public

presentation and commercial use of the IvanTheTroll account. He was a knowing and active cause of the false association.

286. Cody Rutledge Wilson used Elik's identity in interstate commerce in connection with the file sharing business and related goods and services in a manner likely to cause confusion, mistake, or deception concerning Elik's affiliation, participation, sponsorship, or approval.

287. Elik did not authorize the challenged post-revocation presentation. Cody Rutledge Wilson acted knowingly and willfully despite actual notice that Elik demanded deletion and did not authorize continued operation of the account as his presence on the service.

288. That conduct proximately harms Elik's commercial goodwill, professional reputation, and ability to control affiliation with his services, while diverting the value of his identity to Defendants' business. Elik seeks an injunction under 15 U.S.C. § 1116(a), Cody Rutledge Wilson's attributable profits and Elik's damages under § 1117(a).

**PRAYER FOR RELIEF**

289. Plaintiffs request judgment against the Defendants found liable on the respective counts, and the following relief:

a. A declaration that the conduct proved under the respective counts violates the identified provisions of the Copyright Act, the Digital Millennium Copyright Act, and, as to Elik, the Lanham Act;

b. Preliminary and permanent injunctions under 17 U.S.C. §§ 502 and 1203(b) prohibiting unauthorized reproduction, distribution, and public display of the

works identified in this complaint and the knowing provision or distribution of false CMI in connection with those works;

c. An injunction under 15 U.S.C. § 1116(a) prohibiting the misleading operation or presentation of the IvanTheTroll account as Elik's authorized participation, sponsorship, or approval, and requiring removal or correction of the misleading account and promotional representations;

d. Actual copyright damages and attributable profits under 17 U.S.C. § 504(b), or, where legally available and elected, statutory damages under § 504(c), including enhancement for willfulness;

e. Actual damages and attributable additional profits under 17 U.S.C. § 1203(c), or, where elected, statutory damages for each proven section 1202 violation;

f. Elik's damages and the liable Defendants' attributable profits under 15 U.S.C. § 1117(a), together with any adjustment authorized by that provision;

g. Impoundment and disposition of infringing copies and materials to the extent authorized by 17 U.S.C. §§ 503 and 1203(b), with preservation of evidence necessary to determine liability and relief;

h. An accounting of revenues, profits, distributions, and download activity attributable to the violations, including the underlying records necessary to determine the true extent of dissemination;

i. Costs and reasonable attorney's fees under 17 U.S.C. §§ 505 and 1203(b);

j. Prejudgment and postjudgment interest as permitted by law; and

k. Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

290. Plaintiffs demand a trial by jury on all issues triable of right by jury.

DATED: September 21, 2026
Respectfully submitted,

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay, Esq.
Florida Bar No. 1002905
Zermay Law, P.A.
3000 Coral Way, Suite 1115
Coral Gables, Florida 33145
Email: zach@zermaylaw.com
Telephone: (305) 767-3529
*Lead Counsel for Plaintiffs*