# EXHIBIT D

## Cody Wilson Deposition Excerpts

March 17, 2026 | No. 6:24-cv-01629
Original transcript pages 1-2, 5-6, 13-14, 168-172,
284-285, and 298-299.
Residence: 13:23-14:6. Work email: 170:8-12; 284:19-285:1.
Original page and line numbers retained.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW LAROSIERE, )
)
Plaintiff, )
) CASE NO.: 6:24-cv-01629
v. )
)
CODY RUTLEDGE WILSON, DEFCAD, )
Inc., DEFENSE DISTRIBUTED, )
and DIOSKOUROI, LLC., )
)
Defendants. )
______________________________)

VIDEO DEPOSITION OF CODY WILSON

TAKEN BY: PLAINTIFFS HEREIN

DATE: Tuesday, March 17, 2026

TIME: 9:00 a.m. to 12 p.m.
1:00 p.m. to 6:15 p.m.

PLACE: Wilson Elser
2063 Main Street
Suite 100
Sarasota, Florida 34237

REPORTED BY: KARIN J. STRAUSS, Court Reporter
Notary Public
State of Florida at Large

A-P-P-E-A-R-A-N-C-E-S

Appeared on Behalf of Plaintiff:

ZACHARY Z. ZERMAY, Esquire
Zermay Law, P.A.
1200 Fourth Street
#1102
Key West, Florida 33040

Appearing on Behalf of Defendants:

JURA CHRISTINE ZIBAS, Esquire
AMARIS GYEBI, Esquire
Wilson Elser
2063 Main Street
Suite 100
Sarasota, Florida 43237

ALSO PRESENT: Matthew Larosiere, Esquire
Brett Johnston, Videographer

individually today.

MS. GYEBI: Amaris Gyebi for Defendant Wilson, DEFACD, and Defense Distributed. Also here for the deposition of Cody Wilson, individually.

MS. ZIBAS: There's another individual in the room who needs to identify himself.

MR. LAROSIERE: Plaintiff Matthew Larosiere.

THE COURT REPORTER: All right. Sir, would you raise your right hand, please.

THE DEPONENT: (Indicating.)

THE COURT REPORTER: Do you solemnly swear or affirm that the testimony that you're about to give will be the truth, the whole truth, and nothing but the truth?

THE DEPONENT: I do.

THE COURT REPORTER: Thank you.

MR. ZERMAY: Okay.

MS. ZIBAS: I want to make a statement for the record before we proceed.

As there is no Protective Order in place, since Plaintiff and his Counsel indicated. There will be no streaming or use of any ongoing video during the course of this

deposition.

We want to make a statement we do not agree. And we do not permit any streaming, any posting to the internet or anything during the course of this deposition. If there's any issues, we will raise them with the court accordingly.

(WHEREUPON, CODY WILSON, being previously duly sworn by the court reporter testified as follows:)

DIRECT EXAMINATION

BY MR. ZERMAY:

Q Okay. So we're on the record now. Good morning, Mr. Wilson.

A Good morning.

Q I'm Zachary Zermay, representing Matthew Larosiere in this action.

So a question: Have you ever been deposed before?

A I think this is my first time.

Q Okay. So I'm glad I asked. There's some rules to depositions that which, you know, I want to go over.

This is -- well, first off, you're sworn in by the court reporter here, which means that your testimony now is under penalty of

state?
BY MR. ZERMAY:
Q Yeah. Could you spell it?
A My name is spelled C-O-D-Y, R-U-T-L-E-D-G-E, W-I-L-S-O-N.
Q Okay. Have you ever used any other names?
A Could you restate your question?
Q By any other names, like, did you go by any other name in your life?
MS. ZIBAS: Objection to form.
THE DEPONENT: Okay. I don't really -- I don't understand how to answer the question?
BY MR. ZERMAY:
Q Have you been known by any other name other than Cody Rutledge Wilson?
A I don't believe so.
Q Okay. Have you ever legally changed your name?
A No.
Q Have you signed any documents under names other than Cody Rutledge Wilson?
A I don't believe so.
Q So what is your address which you live?
A 8403 Cross Park Drive, Suite 3E, Austin, Texas, 78754.

Q Okay. Is that -- do you have a driver's license?

A I do.

Q Is that the address on the driver's license?

A It is.

Q Okay. So I guess I'll just jump right into it.

So you testified earlier that you haven't used any other names other than Cody Wilson. Could you please list any student names or screen names, handles or account names which you've previously used?

MS. ZIBAS: Objection as to form. Clarification of legal versus web internet use.

THE DEPONENT: To answer your question, yes, I could list any.

BY MR. ZERMAY:

Q Okay. Could you?

A Yes. In this situation I'm not understanding how to proceed, like, the question is could I list them? I believe I could list them.

Q Can you list them?

A Yes.

Q What are they?

accurately answer your question, past those three people.

Q How did you speak to these people about the lawsuit?

A If I was speaking to these people about the lawsuit or when that happened it would have been in a regular DEFCAD meeting. These are held on Wednesdays. Though, it is not my habit to attend every single one of these.

Q Would you have spoken to these individuals about the lawsuit over Slack?

A About the lawsuit? No, I've made it habit not to.

Q Why have you made it a habit not to discuss the lawsuit on Slack with?

A I don't think it's a good idea to open that channel and have them especially pose their questions about the lawsuit or policies related to the lawsuit on Slack. Slack is more their work and their day-to-day communications.

Q Have you used the email address CRW@DEFDIST.com to discuss the lawsuit with anybody?

A No, I haven't.

Q Have you used your work email to discuss the lawsuit with anyone?

A Well, by "anyone" you mean to include my lawyers? I mean, I'm sure I have.

Q Not including the lawyers?

A Oh, I see. It may be that I've used that email in discussions with journalists about the lawsuit.

Q What journalists have you communicated about the lawsuit with?

A Earlier in this deposition we mentioned the 3D Print industry. Definitely that website.

If on occasion I get questions from journalists at that email, like, the Palm Beach Post, for example, they were doing a whole thing about this lawsuit and the RICO thing.

That email? I don't know. I'd have to search more. There are more. I'm sure there are more.

Q Did you produce those communications to your attorneys in discovery?

A I've produced my entire email to my attorneys in discovery.

Q So you've produced your entire email to your attorneys in discovery?

A Yes, I have.

Q Would that include this CRW@DEFDIST.com?

A No, that's not a website or an email that I have.
Q You don't have the email address CRW@DEFDIST.com?
A I don't, no.
Q Are you familiar with that email address?
A I've never used that email address.
Q What is your work email address?
A My work email CRW@DEFDIST.org.
Q Have you produced that email to the rest of your attorneys in discovery?
A I have.
Q And you've used that email address to communicate with journalists about this case?
A To the best of my recollection I believe I have. It may not be true.
Q What is the email server that hosts that email address at, like, for example Gmail or Outlook?
A Oh. It's a Google work space.
Q So it would be with Google?
A But I don't know who services it. Do you know what I mean?
Q Do you have Gmail on your personal cell phone?

A Do I have Gmail on my cell phone? I have the app.
Q Okay. Do you have access to the CRW@DEFDIST.org on your Gmail application on your phone?
A Not at this time.
Q You're qualifying by "at this time." Can you explain that?
A Yeah, yeah. Once I had to give up my whole email for discovery. I prefer one channel for checking and using that email.
Q So it was on your personal cell phone at one time?
A I'm not saying that.
Q What are you saying?
A I'm answering your question.
Q Was the -- when did you open up the CRW@DEFDIST.org email address?
A When was it opened?
Q When did you first subscribe to that email address?
A Oh, man. Well, it wasn't always a Gmail address, if that's what you mean. So the address, itself, predates its use as a Gmail email.
Q What other type of email was it? By that

I mean, like, Outlook or --
A It's been too long. I've had it for 15 years. If you want me to think about it, sit here and think about it, I will.
Q Well, to the best of your recollection what provider did you use?
MS. ZIBAS: You're asking him about 15 years ago?
BY MR. ZERMAY:
Q Well, when did it change over?
A It's changed a few times. At one point it was a Thunderbird account.
Q When was it a Thunderbird account?
A 2012, 2013. We're getting into the territory where I'm going to say things that might not be --
Q Yeah, the best estimate, that's what I'll qualify it as.
A Those are my best estimates.
Q Did it change over from a Thunderbird to a different email server, apart from Gmail, or was it just the Gmail?
A I recall only that it was a Gmail account after 2018 now, I want to say. 2018, '19.
Q Okay. And when did you last have the

Q Did you send that -- for references, this is Plaintiff's Exhibit 5, page 11.
You sent it from the email address CRW@DEFCAD.com, right?
A No, I mailed it.
Q You list your email address at CRW@DEFCAD.com, though?
A I see that I've done that here.
Q You've testified earlier that you have the email address CRW@DEFCAD.org, but not CRW@DEFCAD.com?
MS. ZIBAS: Objection to form. It's DEFDST.org.
THE DEPONENT: That wasn't my testimony.
BY MR. ZERMAY:
Q Do you have access to the website CRW@DEFCAD.com?
A There's no website by that name.
Q You list that as your email address, though; right?
A You mean do I have access to the email?
Q Yes.
A Yes, I do, because I have access to that email.
Q Is that a work email of yours?

A Yes.
Q Why did you list your work email on the Bar complaint that you filed against Matthew Larosiere?
A I think that's a good question. It must be that I thought the Plaintiff's behavior was related to my work.
Q You could have listed the organization beneath your name? You see that on the form; right?
A Oh, I do see a space for "organization."
Q Why didn't you list an organization, like DEFCAD, Defense Distributed, DD --
A Oh, you have to understand I don't know how Bar complaints work. But in the course of running this Bar complaint, I got in with a good Bar complaint firm in Florida. And for the next one I will list the organization.
Q Without telling me what you said to your attorneys, who did you retain?
A Smith Tozian.
Q Could you spell that?
A S-M-I-T-H, T-O-Z-I-A-N.
Q Do you know their address?
A No. But it's in communications that we have already provided in discovery.

REPORTER'S CERTIFICATE

STATE OF FLORIDA )
COUNTY OF SARASOTA )

I, KARIN J. STRAUSS, Court Reporter, certify that I was authorized to and did stenographically report the foregoing Deposition of CODY WILSON and was requested, and that the foregoing transcript, pages 1-301 are a true and complete record of my stenographic notes.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

DATED this 22nd day of March, 2026.

KARIN J. STRAUSS, Court Reporter

C E R T I F I C A T E

STATE OF FLORIDA )
COUNTY OF SARASOTA )

I, the undersigned authority, certify that CODY WILSON was before me, and was duly sworn in on March 17, 2026.

WITNESS my hand and official seal this 22nd day of March, 2026.

Karin J. Strauss

KARIN J. STRAUSS, Court Reporter
Notary Public - State of Florida
My commission # HH 702791
Expires: 8/31/2029