**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MATTHEW LAROSIERE and JOHN ELIK,

Plaintiffs,

v.

CODY RUTLEDGE WILSON; DEFCAD, INC.; DEFENSE DISTRIBUTED; and DD FOUNDATION LLC,

Defendants. /

Case No. 6:26-cv-2173-JSS-LHP

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DD FOUNDATION LLC'S MOTION TO DISMISS, TO STAY OR COMPEL ARBITRATION, AND ALTERNATIVE REQUEST FOR TRANSFER (DOC. 23)**

DD Foundation LLC asks the Court to dismiss it for lack of contacts with Florida while swearing that it owns and operates the paid membership service through which the infringing files were delivered into Orlando. It asks the Court to send Plaintiffs to arbitration in Texas on the strength of a declaration that never says either Plaintiff visited DD Foundation's website, never shows the notice it says every visitor saw, and never says either Plaintiff logged in, clicked on, or agreed to anything. And it asks the Court to dismiss a complaint that assigns each Defendant its role in detail[1], on the theory that the complaint does not say what DD Foundation did. The motion should be denied.

[1] The complaint assigns DD Foundation the receipt and holding of the revenue the operation generates, at Wilson's direction. Compl. ¶¶ 10, 16, 22, 47. DD Foundation now swears that it "owns and operates the DD LEGIO service," Doc. 23-1 ¶ 4, *viz.*, the paid membership that each accused posting "required . . . to download." Doc. 23 at 19, 21. On DD Foundation's own account, then, the membership fees paid for access to the accused files are its revenue, exactly as the complaint alleges.

Plaintiffs file this response because the deadline arrived before the Court ruled on their motion to extend it so they could take discovery on formation of the supposed arbitration agreement. Doc. 27. DD Foundation has never identified what either Plaintiff supposedly saw or accepted, so Plaintiffs must answer a theory of assent to an unknown agreement that DD Foundation has never actually stated.

## I. THE COURT HAS PERSONAL JURISDICTION OVER DD FOUNDATION.

### A. DD Foundation chose not to contest the jurisdictional facts.

A plaintiff must first plead a *prima facie* case of personal jurisdiction. Only if the defendant rebuts it with evidence must the plaintiff come forward with evidence of its own. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350–51 (11th Cir. 2013). To shift the burden, the defendant's affidavit must contain "specific factual declarations within the affiant's personal knowledge"; conclusory denials do not suffice. *Id.* at 1351. DD Foundation made a deliberate choice not to make even that attempt. The motion asks the Court to exclude the declaration from its "complaint-based jurisdictional challenge." Doc. 23 at 17. And DD Foundation told the Court again that this challenge "questions only what the complaint pleads" and "must be answered in kind." Doc. 31 at 4. The question, then, is whether the complaint pleads facts supporting jurisdiction. It does.

**B. The complaint alleges Florida-directed distribution tied to each claim.**

The complaint alleges that DEFCAD solicits Florida memberships, advertises paid downloads, and supplies files to Florida users; that Defense Distributed promotes and receives revenue from the related membership operation; and that DD Foundation participates in the resulting revenue through the enterprise Wilson directs. Compl. ¶¶ 47–52. It alleges actual delivery of the accused works to a computer in Orlando on August 29, 2026. *Id.* ¶ 48. And it alleges that Wilson directs the publication and distribution and that DD Foundation participates through him, with alter-ego attribution pleaded in the alternative. *Id.* ¶¶ 12, 16–18, 22, 32–35, 52–53, 177, 200.

That obviously alleges commercial distribution into Florida, rather than a passive website that merely happens to be reachable here. Florida's long-arm statute reaches a tortious act committed in Florida, including through an agent. Fla. Stat. § 48.193(1)(a)(2). *Mosseri* held that a commercial website distributing infringing goods into Florida supports jurisdiction under both the statute and due process. 736 F.3d at 1353–58. Each count here is tied to Florida activity. Counts 3 and 7 concern reproduction and distribution of the works, including the files delivered in Orlando. Compl. ¶¶ 48, 175–202. Counts 11 and 15 concern the false authorship and licensing information that accompanied those same copies. *Id.* ¶¶ 223–229, 251–257. Count 19 concerns

the use of Elik's identity to promote the same commercial service to customers, including customers in Florida. *Id.* ¶¶ 54, 153–163, 277–282.

*Walden v. Fiore* requires a connection between the defendant and the forum, not just between the defendant and a resident who feels the injury there. 571 U.S. 277, 284–90 (2014). The defendant in *Walden* never entered Nevada, sent anything into it, or did business there. Plaintiffs allege the opposite: distribution and promotion into Florida, and delivery of the accused files here. The question is whether the Florida-directed conduct is DD Foundation's own, through its agent, or attributable to it as an alter ego.

**C. DD Foundation now admits it runs the paywall the complaint says funds the operation.**

The complaint alleges that DD Foundation is where the operation's money goes: it receives revenue shared with DEFCAD and Defense Distributed, and Wilson directs its receipt and disposition of that revenue. Compl. ¶¶ 10, 16, 22, 47. DD Foundation calls those allegations conclusory and argues that, even if true, they "establish receipt of money not Foundation's participation in the activities that allegedly generated it." Doc. 23 at 12. Its own declaration answers that argument. Wilson swears that DD Foundation "owns and operates the DD LEGIO service." Doc. 23-1 ¶ 4. DD Foundation tells the Court that each accused posting "required a paid Legio membership to download," including the files Larosiere downloaded in Florida. Doc. 23 at 19, 21. The proverbial piggybank that sells the

membership required to download the infringing files is not a passive recipient of someone else's revenue. It runs the paywall. It is the doorman at the speakeasy. That is participation in the activity that generated the money, and it is the Florida-directed activity on which the claims rest.

DD Foundation cannot swear to those facts to obtain arbitration while asking the Court to disregard them on jurisdiction. At a minimum, they confirm that the complaint's allegations about DD Foundation's role in the shared-revenue operation are not speculation.

**D. The agency and alter-ego allegations are supported by specific facts.**

DD Foundation concedes that *United States ex rel. Bibby v. Mortgage Investors Corp.*, 987 F.3d 1340, 1355–56 (11th Cir. 2021), forecloses its argument that *Walden* bars attributing an alter ego's forum contacts. Doc. 23 at 15. *Bibby* looks to allegations of unilateral control, disregard of corporate formalities, and commingling. The complaint alleges each. Wilson dominates each entity's policies, personnel, finances, and operations. Compl. ¶ 12. The entities have no functioning boards, meetings, or minutes, and no one but Wilson has an operational role. *Id.* ¶ 18. Wilson controls DD Foundation's receipt and disposition of the enterprise's revenue and directs its participation in exploiting the accused works. *Id.* ¶¶ 16, 22. He consolidated corporate and personal cryptocurrency, continues to commingle and divert funds, and has demanded that debts owed to Defense Distributed be paid to

him personally. *Id.* ¶¶ 23–27, 30–31. And after the first action in this District, he removed DD Foundation's officer and installed himself. *Id.* ¶¶ 28–35.

DD Foundation's Texas cases do not change the analysis. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173–76 (Tex. 2007), requires control beyond ordinary ownership and management. The complaint alleges exactly that: nonfunctioning governance, commingling, diversion, and use of the entities to carry out and keep the proceeds of the conduct at issue. *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 454–56 (Tex. 2008), rejects liability based on coordinated business activity alone, but Plaintiffs specifically allege misuse of the corporate form. The agency theory is also tied to the specific acts: Wilson directed the publication and DD Foundation's participation in it. Compl. ¶¶ 12, 16, 22, 32, 38, 177, 200, 225, 253, 279.

**E. DD Foundation overstates its information-and-belief authority.**

DD Foundation relies heavily on *Scott v. Experian Information Solutions, Inc.*, No. 18-CV-60178, 2018 WL 3360754 (S.D. Fla. June 29, 2018). *Scott* obviously does not reject pleading based on information-and-belief. Rather, it distinguishes inferences supported by facts from speculation. *Id.* at *6–7*. In fact, *Scott* refused to resolve the defendant's corporate role against the plaintiff on the pleadings, holding that the plaintiff's allegations and the

correspondence he received supported a reasonable inference that Equifax was a consumer reporting agency and leaving the contrary contention for summary judgment. *Id. at* 4–5. It dismissed only because the plaintiff could not identify any fact supporting his separate allegation that information had been withheld from him. *Id.* at *6–7*. And it expressly did not reach veil piercing. *Id. at* 5 n.5. Here, Plaintiffs identify the publications, works, accounts, distribution, management practices, and revenue relationships that support their allegations about DD Foundation's internal role, facts that are within Defendants' control. *See* Fed. R. Civ. P. 11(b)(3).

If the Court concludes that it needs facts about DD Foundation's operational role, its Florida revenue, or its control of the business, Plaintiffs request limited jurisdictional discovery before any dismissal. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729–31 (11th Cir. 1982).

## II. DD FOUNDATION HAS NOT SHOWN THAT EITHER PLAINTIFF AGREED TO ARBITRATE.

### A. DD Foundation failed to prove the formation of an agreement.

The party seeking arbitration must prove the existence and terms of the agreement it seeks to enforce. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016). The Court applies a summary-judgment-like standard, *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1347 (11th Cir. 2025), so DD Foundation must show that no reasonable jury could find against it. *Valiente v. Nexgen Glob., LLC*, No. 23-13308, 2025 WL

3140480, at *4 (11th Cir. Nov. 10, 2025*). Whether an agreement was formed is for the Court. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296–300 (2010). DD Foundation itself recognizes the sequence: only "[o]nce the Court establishes the applicable agreement and DD Foundation LLC's right to enforce it" do scope questions go to an arbitrator. Doc. 23 at 19.

DD Foundation has argued that Plaintiffs must "unequivocally deny" the agreement before it is put to its proof. Doc. 31 at 5–6. That is not the law. *Bazemore* recited that formulation from *Wheat* and *Chastain* only to explain that it predates *First Options* and that no published Eleventh Circuit decision had applied it in the "nearly quarter-century since." 827 F.3d at 1329–30. The plaintiff in *Bazemore* filed no affidavit at all, and the motion to compel arbitration still failed as a matter of law because the movant could not prove what she had received. *Id.* at 1334. In any event, both Plaintiffs have now denied that they agreed to anything.

**B. There is no evidence that either Plaintiff entered into the Legio agreement.**

The Legio Terms are the only agreement DD Foundation is a party to. Wilson says DD Foundation owns and operates ddlegio.com. Doc. 23-1 ¶ 4. But he never identifies a visit to that site by either Plaintiff, nor a membership bought by either Plaintiff, nor any transaction in which either accepted the Legio Terms. His paragraph 16 describes what happened to "every person who proceeded to view ddlegio.com." It does not say that these

Plaintiffs did. DD Foundation fills the gap with the complaint's allegation that the accused postings required a paid Legio membership. Doc. 23 at 21; Compl. ¶ 63. But a condition of access is not proof a particular person met it, much less on what terms. DD Foundation operates Legio and would have any record of a purchase or acceptance by either Plaintiff. It offered none.

Larosiere has never personally purchased a Legio membership, created a Legio account, or completed its registration or verification process, and he does not recall visiting ddlegio.com during the investigation. Ex. A ¶¶ 4–5. Elik did not visit ddlegio.com during his inspection. Ex. B ¶¶ 3, 6. Neither accepted any terms during the investigation. Ex. A ¶ 6; Ex. B ¶ 4.

**C. Wilson's declaration does not show notice or assent under the DEFCAD Terms.**

Wilson says every DEFCAD visitor encountered a notice before viewing content. Doc. 23-1 ¶¶ 12, 15. He does not reproduce that notice or describe it. He does not say whether a visitor had to click anything. He describes a separate login notice, but never says either Plaintiff logged in. *Id.* ¶¶ 13–15.

Those omissions decide the motion. Under Florida law, terms accepted by continued use of a website bind a user only if the user actually knew of them or the notice was conspicuous enough to put a reasonably prudent person on inquiry notice. *Valiente*, 2025 WL 3140480, at *5*. "Anyone who seeks to enforce an arbitration clause through a browsewrap agreement must prominently display the hyperlink that leads to the clause." *Tejon v. Zeus*

*Networks, LLC*, 174 F.4th 1322, 1326 (11th Cir. 2026). Whether it did so "requires an evaluation of the general design and content of the page containing the hyperlink." *Id.* at 1327. The court in *Tejon* examined the actual page, and whether the page told the user that a particular action would constitute acceptance. *Id.* at 1327–28. A statement that a notice existed gives the Court nothing to evaluate. Texas law, which DD Foundation invokes, is no different. In *StubHub, Inc. v. Ball*, 676 S.W.3d 193 (Tex. App. 14th 2023), the company's declarant swore that the plaintiff created an account and accepted the user agreement. The court held those statements "simply too general" to prove assent, because they did not explain how a user manifested acceptance and were unaccompanied by any description or image of the interface. *Id.* at 202. Wilson's declaration is thinner still: it does not even claim that either Plaintiff created an account.

*Lamonaco* does not help DD Foundation. The declarant there identified the date the plaintiff enrolled, described the submission process she completed, and attached screenshots of the pages she encountered, and the plaintiff did "not deny enrolling." 141 F.4th at 1345, 1348. *Lamonaco* distinguished *Bazemore* precisely because the movant there "submitted no evidence of what the plaintiff saw," and compelled arbitration only because "the opposing party offer[ed] no factual rebuttal." *Id.* at 1348. Here, DD Foundation has offered no evidence of what either Plaintiff saw, and both

Plaintiffs have rebutted its assertions. Wilson identifies nothing either Plaintiff did. And Plaintiffs have testified about their own conduct. Larosiere did not complete the account-signup process, did not assent to any terms during the investigation, and did not click any button or check any box indicating acceptance; before the investigation, he had not read and did not know of any arbitration provision. Ex. A ¶¶ 3, 6–7. Elik viewed public pages without logging in, downloading files, or buying anything; he did not agree to any terms during that inspection, did not click any acceptance button or checkbox, and did not know of any arbitration provision. Ex. B ¶¶ 2–5.

**D. The IvanTheTroll account and earlier terms do not fill the gap.**

The complaint alleges that Walliman created the IvanTheTroll account around 2020 and gave Elik credentials. Compl. ¶ 150. Elik did not personally complete its registration, purchase a membership, or accept terms in connection with it. Ex. B ¶ 7. Wilson attaches terms dated January 1, 2026, and says "substantially the same" arbitration provision has appeared since at least 2021. Doc. 23-1 ¶¶ 4–10. That does not identify any terms Elik accepted around 2020, explain how a later version could bind him, or describe any notice process before 2026. And Count 19 concerns Defendants' use of Elik's identity after he told them in August 2022 to delete the account and they locked him out of it. Compl. ¶¶ 151–163, 277–282. Defendants' continued

operation of an account they took from Elik can not be evidence that Elik agreed to anything.

**E. The Terms bar Plaintiffs from the very access DD Foundation says created a contract.**

DD Foundation, nor its co-defendant declarant can possibly explain how either Plaintiff could be bound by terms that explicitly exclude them, largely because the argument is unserious. This position is particularly remarkable given Defendants' prior litigation posture. Defense Distributed, purporting to act for itself and DEFCAD, previously accused both Plaintiffs of violating the Computer Fraud and Abuse Act because DEFCAD's terms prohibited their access. *See* Counterclaims & Answer ¶¶ 12, 191, 223–225(b), *Larosiere v. Wilson*, No. 6:24-cv-01629 (M.D. Fla.), Doc. 29 at 8, 70, 79–80. That pleading bears the name of the same counsel who signs the present motion, Chad Flores. Compare *id.* at 109, with Doc. 23 at 26. And DD Foundation now relies on co-defendant Cody Wilson—the same individual identified in the earlier pleading as Defense Distributed's director who declares his involvement in all three entities' operations. *Compare* prior Doc. 29 ¶ 71, with Doc. 23-1 ¶¶ 2–3. Through the same counsel and overlapping management, Plaintiffs' access is thus portrayed as unlawful when supporting claims against them, but consensual when seeking to deprive them of a judicial forum.

The DEFCAD Terms forbid access by "[a]ttorneys, employees, agents and associates of" Zermay Law, "[n]otwithstanding any other part of these Terms," and state that "no permission to access is granted" to those persons. Doc. 23-1 at 15. The Legio Terms contain the same prohibition, state that it is intended "to immediately and permanently revoke any pre-existing express or implied grant of permission to access this site," and make "[g]eneral LEGIO membership" available to "anyone except for" the prohibited persons. *Id.* at 5–7. Larosiere was a Zermay Law partner during the investigation. Ex. A ¶ 8. DD Foundation cannot ask the Court to infer an ordinary membership relationship with a person its own terms exclude from membership.

**F. Investigating an infringement is not consent to arbitrate it.**

Plaintiffs discovered their works being copied and distributed without authorization. They inspected the postings and confirmed the copying. DD Foundation now says that investigation moved their statutory claims into private arbitration in Texas. On that theory, an infringer controls the forum for its own misconduct by controlling where the evidence is. An owner who inspects the infringement gives up the courthouse; an owner who does not could only file at the peril of Rule 11, whose duty of reasonable inquiry cannot become the means by which the target of that inquiry obtains an agreement governing the resulting lawsuit.

A court rejected this same move. In *E & E Co. v. Light In The Box Ltd.*, the plaintiff's employee bought infringing goods from the defendant's website to confirm the infringement, and the defendant argued that the purchase sent the plaintiff's copyright and trademark claims to arbitration. The court held that result "would make little sense and would be contrary to sound public policy," asking why a plaintiff should "be deprived of a judicial forum that it would ordinarily be entitled to just because it takes steps to ensure that it is meeting its judicially required obligations." No. 15-cv-00069-EMC, 2015 WL 5915432, at 8 (N.D. Cal. Oct. 9, 2015). The purchase there "was not a bona fide purchase but rather one made for purposes of litigation." *Id.* So were the downloads here. Ex. A ¶ 2. Elik did not even make a purchase or log in. Ex. B ¶¶ 2–3. Plaintiffs' ownership rights, and Defendants' duties not to violate Plaintiffs' rights, in no way stem from or originate in those website visits.

The same reasoning resolves scope if the Court reaches it. The clauses cover disputes "arising from or related in any way to" the Terms. Doc. 23 at 17. These claims concern Defendants' unauthorized exploitation of Plaintiffs' works and identity, not Plaintiffs' website-use agreement.

**G. DD Foundation cannot enforce the DEFCAD Terms.**

The DEFCAD Terms state that they "constitute a legal agreement between you and DEFCAD" and "are not intended to be, and shall not be,

enforceable by any third party/parties." Doc. 23-1 at 24, § 4.10. DD Foundation is a third party. It offers two exceptions. Neither applies.

Its direct-benefits argument rests on the fact that Counts 11 and 15 discuss the Terms' licensing provisions. Doc. 23 at 22–23. But Plaintiffs do not seek to enforce those provisions or claim any license under them. They allege that Defendants falsely represented authority to license Plaintiffs' works. Compl. ¶¶ 227–228, 255–256. *In re Weekley Homes, L.P.* distinguishes claims that depend on a contract from claims under independent legal duties, and recognizes estoppel where a nonsignatory deliberately seeks substantial benefits from the contract. 180 S.W.3d 127, 131–35 (Tex. 2005). Plaintiffs' claims arise under the Copyright Act and the Lanham Act, and neither Plaintiff has sought any benefit from DEFCAD's Terms.

The alter-ego alternative fails for a more basic reason. Even if DD Foundation could step into DEFCAD's shoes, it would get only the rights DEFCAD actually has against these Plaintiffs. Without proof that either Plaintiff agreed to DEFCAD's Terms, there are none. DD Foundation also "does not concede" the relationship it relies on, so the argument spills ink for no reason. Doc. 23 at 23.

### H. At a minimum, the Court should allow formation discovery and a jury trial.

Plaintiffs' declarations address their own conduct. They cannot show how Defendants built their websites, or what records DD Foundation has.

Doc. 27 identifies the discovery needed: the operative and historical terms, the notices and how they were displayed, any records used to attribute acceptance to either Plaintiff, and a limited deposition of Wilson on his declaration. Doc. 27 at 5–6. This Court has recognized that motions "that turn on findings of fact . . . may require some limited discovery before a meaningful ruling can be made," and has allowed the deposition of the declarant whose testimony supported a disputed motion to compel arbitration. *Sundial Partners, Inc. v. Atl. St. Cap. Mgmt. LLC*, No. 8:15-cv-861-T-23JSS, 2015 WL 6157105, at *2 (M.D. Fla. Oct. 19, 2015) (Sneed, M.J.).

Plaintiffs ask the Court to deny the arbitration request on this record. Alternatively, the Court should set a short period for the discovery identified in Doc. 27 and supplemental briefing before resolving any disputed formation fact against Plaintiffs. If a genuine dispute remains, Plaintiffs renew their jury demand under 9 U.S.C. § 4. Doc. 27 at 7.

## III. THE TRANSFER REQUEST FAILS WITH THE ARBITRATION REQUEST.

DD Foundation asks to transfer "the arbitrable claims" to the Western District of Texas if needed to enforce the Austin arbitration provision. Doc. 23 at 2, 26. It depends entirely on the unproven premise that Plaintiffs agreed to arbitrate there. DD Foundation offers no analysis under 28 U.S.C. § 1404(a) and identifies no witness, evidence, or other convenience factor favoring

Texas. Nor should the Court enter a stay under 9 U.S.C. § 3 without first finding an issue referable to arbitration under an enforceable agreement.

## IV. THE COMPLAINT STATES CLAIMS AGAINST DD FOUNDATION.

### A. DD Foundation only disputes responsibility.

Part III of their motion mostly repeats the jurisdictional objections answered above. Doc. 23 at 24–25. The shotgun-pleading charge is defeated by the complaint. DD Foundation is named in five separate counts, each identifying the claimant, incorporating specified paragraphs, describing the conduct at issue, and stating DD Foundation's responsibility. Count 3 concerns the copying and distribution of Larosiere's works through the operation in which DD Foundation knowingly participated. Compl. ¶¶ 175–179. Count 7 concerns the same conduct as to Elik's photographs, including specified removed postings. *Id.* ¶¶ 197–202. Counts 11 and 15 concern DD Foundation's participation through Wilson in supplying false authorship and licensing information with those works. *Id.* ¶¶ 223–229, 251–257. Count 19 concerns DD Foundation's participation through Wilson in the commercial use of Elik's identity after he withdrew authorization. *Id.* ¶¶ 277–282. Each count alleges participation, receipt of the proceeds, and alternative responsibility through the misuse of the entities.

A complaint is a shotgun pleading only if it fails "to give the defendants adequate notice of the claims against them and the grounds upon which each

claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Naming several participants in a coordinated course of conduct is no such defect. DD Foundation may dispute what the complaint says it did, but it plainly understands what that is.

**B. DD Foundation has not shown futility, and its own declaration refutes it.**

DD Foundation seeks dismissal with prejudice on the theory that no amendment could connect it to conduct the complaint assigns to the other defendants. Doc. 23 at 25–26. That does not follow. Wilson has now sworn that DD Foundation owns and operates Legio, the paid service through which the accused files were sold. The movant has literally admitted it is both the doorman and piggybank of the operation. Doc. 23-1 ¶ 4; Doc. 23 at 19, 21. *Barmapov v. Amuial* affirmed dismissal only after the plaintiff failed to fix a shotgun pleading despite notice of its defects and an opportunity to amend. 986 F.3d 1321, 1326 (11th Cir. 2021).

Finally, DD Foundation's detailed, paragraph-by-paragraph engagement with the complaint shows that it is not so vague or ambiguous that DD Foundation cannot reasonably prepare a response, so Rule 12(e) does not apply. And the alter-ego allegations are not immaterial under Rule 12(f). Rather, DD foundation shockingly uses the theory in an attempt to avail itself of one of its alter ego entities' arbitration agreements. Disagreement with their truth is not a ground to strike them.

## CONCLUSION

The Court should deny Doc. 23 in full. Alternatively, before resolving disputed formation facts against Plaintiffs, the Court should await the discovery identified in Doc. 27 and supplemental briefing, followed by a jury trial under 9 U.S.C. § 4 if a genuine dispute remains. If the Court needs facts to resolve personal jurisdiction, Plaintiffs request limited jurisdictional discovery. If it finds a pleading deficiency, Plaintiffs request leave to amend.

Dated: November 6, 2026

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay
Florida Bar No. 1002905
Zermay Law, P.A.
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
(305) 767-3529
zach@zermaylaw.com
Lead Counsel for Plaintiffs

*/s/ Matthew Larosiere*
Matthew Larosiere
Florida Bar No. 1005581
The Law Office of Matthew Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
(561) 452-7575
larosieremm@gmail.com
Counsel for Plaintiff John Elik

## CERTIFICATE OF SERVICE

I certify that on November 6, 2026, I filed this paper through CM/ECF, which will serve all counsel of record.

*/s/ Matthew Larosiere*