**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MATTHEW LAROSIERE and JOHN ELIK,**

**Plaintiffs,**

**vs.** **Case No.: 6:26-cv-2173-JSS-CAB**

**CODY RUTLEDGE WILSON, DEFCAD, INC., DEFENSE DISTRIBUTED, and DD FOUNDATION,**

**Defendants.**
_______________________________________/

# DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM; OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION, OR TO TRANSFER VENUE AND INCORPORATED MEMORANDUM OF LAW

Defendants, **CODY RUTLEDGE WILSON** ("Wilson"), **DEFCAD, Inc.** ("DEFCAD"), and **DEFENSE DISTRIBUTED** ("DEFENSE DISTRIBUTED"), (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6)[1], Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3–4, 28 U.S.C. §§ 1404(a) and 1406(a), and Local Rule 3.01, move to dismiss the Complaint and Demand for Jury Trial (Doc. 1) (the "Complaint") filed by Plaintiffs, **MATTHEW LAROSIERE** and **JOHN ELIK** ("Plaintiffs"), and state as follows:

[1] Defendants raise Rule 12 defenses in this single motion to comply with Rule 12(g)(2) and do not waive any defense, including their right to arbitrate.

## I. INTRODUCTION

This is the third lawsuit Larosiere has filed in this District against the same Texas defendants, and the first in which he is joined by Elik, his employee, and an Illinois resident. Every Defendant is a Texas resident or Texas entity with its principal operations in Austin, Texas. (Dkt No. 1 at ¶¶ 7–10.) The only link between Florida and the conduct at issue is that, on August 29, 2026, Plaintiff Larosiere himself logged on to DEFCAD.com from Orlando and downloaded the files that he says were infringed. (*Id.* ¶48.) A plaintiff cannot manufacture jurisdiction by reaching into a defendant's website and pulling content into his own forum. Elik's claims have no Florida connection.

The Complaint's attempt to sweep all four Defendants into Florida through conclusory "alter ego," "agency," and "integrated operation" labels fails as well. (Dkt. No. at 1 ¶¶12–35, 47, 107, 177, 182, 200, 206, 214, 221, 228, 235, 242, 249, 256, and 263). Those allegations are mostly pled "on information and belief"—describing ordinary features of affiliated companies (common officers, a shared address, a shared registered agent) and a cryptocurrency transaction from 2018 that has nothing to do with this case. They do not allege the improper use of the corporate form to cause Plaintiffs' injury that Florida law requires before a court may disregard corporate separateness, for jurisdiction or otherwise.

Independently, Counts 9 through 16, which assert violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(a), fail to state a claim. (*Id.* at ¶¶209–264). The "creator" usernames and the generic, site-wide link to the

DEFCAD Terms of Service are not "copyright management information,"; the Complaint itself pleads that the pages expressly stated, "No license," and the Complaint does not plausibly plead the double scienter that § 1202(a) requires.

Finally, if any claim survives, it belongs elsewhere. Plaintiffs' own pleading establishes that every accused file sat behind a paid DDLegio membership and was expressly "governed by the DEFCAD Terms of Service." (*Id.* ¶¶ 63, 110.) Those Terms and the LEGIO membership terms contain a binding arbitration agreement that Plaintiffs accepted, and Plaintiffs' DMCA theory is built on those very Terms. The Court should compel arbitration and stay any remaining proceedings. Alternatively, the Court should transfer this action to the Western District of Texas, Austin Division, where every Defendant, every witness, and every relevant record is located.

## II. PROCEDURAL BACKGROUND

Larosiere alleges he is a Florida citizen. (*Id.* at ¶5.) Elik alleges he is a citizen of Illinois residing in Madison County, Illinois. (*Id.* at ¶6.) Wilson resides in Austin, Texas. (*Id.* at ¶ 7.) DEFCAD is alleged to be organized under Texas and Delaware law with its principal operations in Austin. (*Id.* at ¶8.) Defense Distributed is a Texas nonprofit corporation with its principal operations in Austin. (*Id.* at ¶9.) DD Foundation is a Texas limited liability company with a registered office in Austin. (*Id.* at ¶¶10, 16.) No Defendant is alleged to have an office, employee, property, or registered agent in Florida.

Plaintiffs challenge seven (7) "media" postings created on or about August 22, 2026, on DEFCAD.com, and five postings removed on or about March 31, 2026. (*Id.*

at ¶¶ 62, 70–71, 83–87, 92–97.) Plaintiffs allege that each of the seven (7) August 2026 postings "required a paid membership to Defendants' Legio service in order to download the accused works." (*Id.* at ¶ 63.) Each page displayed "No license" and stated that the contributor had not attached a license to the release. (*Id.* at ¶ 109.) Each page also stated: "Use of these files is governed by the DEFCAD Terms of Service," with a link to https://defcad.com/terms-of-service. (*Id.* at ¶ 110.) Plaintiffs rely on Sections 2.2 and 3.0 of those Terms as the basis for their "false licensing information" DMCA theory. (*Id.* at ¶¶ 111–17.)

The DEFCAD Terms of Service and the DDLegio membership terms each contain an agreement to arbitrate. Attached as **Exhibit 1** is a true and correct copy of the Declaration of Cody Rutledge Wilson ("Wilson Decl."), which incorporates by DEFCAD's Terms of Service (**Exhibits H, J, L**). The DEFCAD Terms of Service, version 3.5, bear the notation "Last Updated: January 1st, 2026," and were in effect in unchanged form from January 1, 2026 through October 15, 2026. (Exs. H, J. L.) Section 1.0 of the DEFCAD Terms states: "By accessing this site, you agree to the following terms." (Ex. L § 1.0.)

Section 4.4 of each set of Terms, titled "Dispute Resolution and Binding Arbitration," provides in full:

> ANY CLAIM, DISPUTE OR CONTROVERSY ARISING FROM OR RELATED IN ANY WAY TO THESE TERMS OR ANY PROVISIONS HEREIN SHALL BE RESOLVED BY BINDING ARBITRATION. UNLESS BOTH PARTIES AGREE OTHERWISE, AND REGARDLESS OF THE AMOUNT [I]N DISPUTE, THE PARTIES EXPRESSLY AGREE THE ARBITRATION SHALL BE CONDUCTED BY THE AMERICAN ARBITRATION

> ASSOCIATION ("AAA"), IN AUSTIN, TEXAS, PURSUANT TO THE AAA'S RULES OF EXPEDITED COMMERCIAL ARBITRATION.

(Ex. L § 4.4) Section 4.3 provides that matters arising out of or relating to the Terms are governed by Texas law. (Ex. L § 4.3.) Section 4.12 provides that the Terms "constitute the entire agreement between you and DEFCAD," and Section 4.11 contains a severability clause. (*Id.* §§ 4.11–4.12.) Both sets of Terms have contained substantially the same arbitration provision since at least 2021. (Wilson Decl., Ex. 1 at ¶10.)

Elik created and held a DEFCAD account, "IvanTheTroll," beginning around 2020, and he received and used its login credentials. (Dkt. No. 1, at ¶150.) Larosiere accessed DEFCAD.com on August 29, 2026, and downloaded each of the accused postings, which required a paid Legio membership. (*Id.* at ¶¶48, 63). If downloading the media postings required a paid DD LEGIO membership, then obtaining that membership required assent to the DD LEGIO Terms. Larosiere accessed DEFCAD.com and downloaded the identified postings on or about August 29, 2026 (Dkt. No. 1 ¶ 48), and Elik inspected DEFCAD.com after the August 23, 2026 newsletter (Dkt. No. 1 ¶61).

The mandatory DEFCAD visitor notice applied to those visits. (Wilson Decl., Ex. 1 at ¶24). A visitor could not inspect website content without encountering and proceeding past the agreement notice. (*Id.)* A user logging in also encountered and completed the login process described above. (*Id.)* The Terms linked through those notices in August 2026 were the Terms reproduced on DEFCAD.com. (*Id.*) The DD

LEGIO visitor process likewise presented the notice and the Terms to every person who viewed ddlegio.com during that period. (*Id.* at ¶25).

Against this backdrop, Defendants identify the jurisdictional and substantive issues addressed in the Plaintiff's Complaint. *See generally*, *e.g.,* Doc. 1.

## III. THE JURISDICTIONAL AND ALTER-EGO ALLEGATIONS

Plaintiffs allege specific jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)1. and 2. (Dkt. No. 1, at ¶¶ 50–53.) The only Florida-specific conduct alleged is that DEFCAD "solicit[s] memberships, advertise[es] its paid downloads, and suppl[ies] downloadable files to users in Florida," that Larosiere downloaded the accused postings in Orlando, and that "[o]n information and belief, others in Florida have accessed DEFCAD.com." (*Id.* at ¶¶ 47, 49.) As to Defense Distributed and DD Foundation, the Complaint relies on "participation" in an "integrated business" and, "alternatively," supported through "alter-ego" theories. (*Id.* at ¶¶ 51–52.)

The alter-ego allegations rest on Wilson's officer roles, a shared Austin business address and registered agent, an alleged absence of board meetings, a 2018 cryptocurrency consolidation, and allegations "on information and belief" of commingling. (*Id.* at ¶¶ 12–35.)

## IV. ARGUMENT AND AUTHORITIES.

### A. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS (RULE 12(b)(2)).

#### i. <u>Legal Standard</u>



402771645v.1

A plaintiff bears the initial burden of alleging sufficient facts to make out a p*rima facie case* of personal jurisdiction. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant submits affidavits contesting jurisdiction, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id.; Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). Because neither the Copyright Act nor the Lanham Act provides nationwide process service, the Court undertakes a two-step inquiry: whether Florida's long-arm statute is satisfied, and whether the exercise of jurisdiction comports with due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Jurisdiction must be established separately as to each defendant and each claim. *See Calder v. Jones,* 465 U.S. 783, 790 (1984); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Florida's long-arm statute is strictly construed. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

ii. Defendants Are Not Subject to General Jurisdiction.

Plaintiffs do not allege general jurisdiction. A corporation is "at home" only in its place of incorporation and principal place of business absent an "exceptional case," and an individual is at home in his domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 & n.19 (2014). Every Defendant is at home in Texas (or, for DEFCAD, Texas and Delaware). (Dkt. No. 1, at ¶¶7–10.) Operating a website accessible in Florida does not render a defendant at home here. *See World Media All. Label, Inc. v. Sas*, No. 24-12079, 2025 LX 205947, at *10 (11th Cir. July 28, 2025) (citing *Fraser v. Smith,* 594

F.3d 842, 844-47 (11th Cir. 2010) (finding no general jurisdiction over foreign-based defendant, although it maintained a website accessible from Florida, advertised in the Miami Herald, procured insurance through a Florida agent, purchased about half its boats in Florida, and sent employees/representatives to Florida for training and to promote its services)).

iii. Section 48.193(1)(a)1- Long-Arm Statute Is Not Satisfied.

Plaintiffs have not alleged that any Defendant "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in this state" or has "an office or agency in this state." § 48.193(1)(a)(1), Fla. Stat. (2026). This prong requires a general course of business activity in Florida for pecuniary benefit, considering factors such as the presence and operation of an office in Florida, licenses, the percentage of revenue derived from Florida customers, and whether the defendant has Florida clients. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). The Complaint offers only the conclusory assertion that DEFCAD "conducts business with Florida customers." (Dkt. No. 1 at ¶47.) It pleads no Florida revenue, office, employee, license, or targeted Florida advertising. (Wilson Decl., Ex. 1 at ¶¶6–11).

Pursuant to Section 48.193(1)(a)2, the tortious-act prong requires the act to be committed in Florida. §48.193(1)(a)2, *Fla. Stat.* (2026). Although an out-of-state defendant's website posting can, in some circumstances, constitute a tort "committed" in Florida, the Florida Supreme Court has required that the material actually be accessed in Florida, *see e.g., Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214–16

(Fla. 2010) (addressing the long arm statute), and the Eleventh Circuit has applied that rule to intellectual-property claims where the defendant's website was used to sell and ship infringing goods into Florida to Florida consumers. *Louis Vuitton*, 736 F.3d at 1353–55.

Here, the only alleged access in Florida was by Larosiere himself, for purposes of building this lawsuit. (*Id.* at ¶¶ 48, 61.) The "information and belief" allegation that "others in Florida" downloaded the files (*Id.* at ¶ 49) is unsupported speculation entitled to no weight. Elik's claims fare worse: no Elik work was downloaded in Florida by anyone other than Larosiere, Elik suffered no injury in Florida, and Elik's Lanham Act claim concerns an account profile operated in Texas that is not alleged to have been viewed by anyone in Florida. (*Id.* at ¶¶ 149–64.) An Illinois plaintiff's injury is not suffered in Florida.

iv. <u>Exercising Jurisdiction Would Violate Due Process.</u>

Due process requires that the defendant purposefully availed itself of the privilege of conducting activities in the forum, that the claims "arise out of or relate to" those contacts, and that jurisdiction comports with fair play and substantial justice. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351, 359–60 (2021); *Louis Vuitton*, 736 F.3d at 1355. The relationship "must arise out of contacts that the defendant himself creates with the forum," and "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (emphasis in original). Mere knowledge that a plaintiff resides in the forum is insufficient. *Id.* at 289–90.

The Complaint's theory collapses under *Walden*. The accused postings were created in Texas and made available on a website accessible worldwide. (Dkt. No. 1, Ex. 1, at ¶¶ 8, 20, 62.) The one Florida "delivery" occurred because Larosiere himself downloaded the files from Orlando. (*Id.* ¶ 48.) That is precisely the "unilateral activity of another party" that cannot support jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Walden,* 571 U.S. at 284. Nor does the *Calder* "effects" test help Plaintiffs: it requires an intentional tort "expressly aimed" at the forum, and Plaintiffs plead no Florida-directed content in the accused postings. *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 n.6 (11th Cir. 2008)(defining "expressly aimed" as when a defendant targets an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not). Wilson's knowledge that Larosiere lives in Florida and his participation in prior litigation here (*Id.* at ¶ 53) are exactly the kind of plaintiff-focused contacts *Walden* rejected. *See Walden,* 571 U.S. at 284. Defending a lawsuit in a forum is not consent to future suits there. And, again, nothing about Elik's claims relates to Florida.

Finally, jurisdiction would offend fair play and substantial justice. All Defendants, witnesses, and records are in Texas; one Plaintiff is in Illinois; and Florida has little interest in adjudicating an Illinois resident's claims against Texas defendants. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985).

v. Wilson Is Protected by the Corporate Shield Doctrine.

Under Florida law, a nonresident employee or officer is not subject to personal jurisdiction based solely on acts performed in a corporate capacity. *Doe v. Thompson,*

620 So. 2d 1004, 1006 (Fla. 1993) (recognizing that the acts of a corporate employee performed in a corporate capacity do not form the basis for jurisdiction over a corporate employee in an individual capacity). The Complaint's allegations as to Wilson concern his direction of DEFCAD's and Defense Distributed's operations as an officer and director. (Dkt. No. 1, at ¶¶ 7, 12–15, 36–39.) Although the doctrine does not shield an officer who personally commits an intentional tort aimed at Florida, *see e.g.*, *Doe,* 620 So. 2d at 1006 (noting that a nonresident corporate employee will not be hauled into a Florida court by virtue of his position when that individual has not been in Florida), Plaintiffs have not pled such a tort for the reasons stated above; the allegation that Wilson "or employees acting at his direction" made the postings is pled only on information and belief. (*Id.* at ¶¶ 38–39.)

## V. THE AGENCY, "INTEGRATED OPERATION," AND ALTER-EGO ALLEGATIONS CANNOT SUPPLY JURISDICTION OVER DEFENSE DISTRIBUTED, DD FOUNDATION, OR WILSON.

Plaintiffs recognize that Defense Distributed and Wilson had no independent Florida contacts, so they attempt to impute DEFCAD's alleged contacts to the others through agency and alter-ego labels. (Dkt. No. 1, at ¶¶ 12–35, 51–52.) Those theories fail.

### i. The Alter-Ego Allegations Do Not Satisfy Florida's Demanding Veil-Piercing Standard.

A court may exercise jurisdiction over one entity based on the forum contacts of another only where the plaintiff establishes that the corporate veil should be pierced. *See also Meterlogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1354–55 (S.D. Fla.

2000). Under Florida law, a plaintiff must prove that (1) the shareholder dominated and controlled the corporation to such an extent that its independent existence was nonexistent, making the shareholder an alter ego; (2) the corporate form was used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011*); Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120–21 (Fla. 1984). Mere ownership, common officers, or domination is insufficient without improper conduct. *Dania Jai-Alai*, 450 So. 2d at 1120–21.

Applying the above authorities, the Complaint's allegations all fell short:

- Shared officers, address, and registered agent. Wilson and DEFCAD, the entities' use of the same Austin address, and Defense Distributed's service as DEFCAD's registered agent (Dkt. 1, at ¶¶ 13–16) are commonplace features of affiliated companies and do not show that any entity's separate existence was a sham.
- Board formalities. The assertion that the entities "do not have functioning directorial boards" (*Id.* at ¶18) is a conclusion without factual support and, in any event, does not show improper use of the corporate form.
- Irrelevant and stale financial allegations. The 2018 cryptocurrency consolidation (*Id.* at ¶¶23–25) predates the challenged conduct by eight years and is not connected to Plaintiffs' alleged injury. The remaining commingling and diversion allegations are pled entirely "on information and belief" without supporting facts. (*Id.* at ¶¶ 26–27, 29, 33.)

- No causal link. Plaintiffs do not allege that any Defendant used the corporate form to commit the alleged infringement or to evade a judgment owed to them; their prior suits settled. (*Id.* at ¶4.) The allegation that corporate separateness "impairs Plaintiffs' ability to obtain effective relief" (*Id.* at ¶ 34) is speculative and is the kind of conclusion Twombly forbids.
- Inflammatory, irrelevant matter. Allegations about a "fugitive" board member, newsletters, and a bookmark (*Id.* at ¶¶ 19, 137–42) say nothing about corporate separateness. Defendants reserve the right to move to strike them under Rule 12(f).

Conclusory allegations "on information and belief" do not suffice to establish jurisdiction or to pierce the veil. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And the Complaint pleads the theory in the alternative and in reverse—asserting that the entities are Wilson's alter egos (*Id.* at ¶ 35)—which, even if credited, would at most impute Wilson's contacts to the entities. Because Wilson has no qualifying Florida contacts of his own, the theory imputes nothing.

ii. The Agency and "Integrated Operation" Theories Fail.

Florida's long-arm statute reaches acts committed "personally or through an agent," Fla. Stat. § 48.193(1)(a), but the plaintiff must plead facts showing an actual agency relationship—acknowledgment by the principal that the agent will act for it, the agent's acceptance, and the principal's control over the agent's actions. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995). The Complaint's assertion that



402771645v.1

"[o]n information and belief, Wilson acted for and on behalf of DD Foundation as its controlling agent" (Ex. 1, at ¶¶ 177, 200, 225, 253, 279) is a bare legal conclusion.

Likewise, allegations that Defense Distributed "supplies personnel" and promotes memberships (*Id.* at ¶¶ 21, 51) do not identify any act by Defense Distributed directed at Florida. "Group pleading" that lumps three defendants into one "integrated operation" cannot substitute for defendant-specific jurisdictional facts. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (each defendant's contacts must be assessed individually); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (condemning pleadings that assert claims against multiple defendants without specifying which defendant is responsible for which acts). For these reasons, the Court lacks personal jurisdiction over the Defendants for Plaintiffs' claims.

Although the absence of personal jurisdiction alone requires dismissal, Defendants address the sufficiency of Plaintiff's allegations in the alternative, and without waiving its jurisdictional objection.

## VI. COUNTS 9 THROUGH 16 FAIL TO STATE A CLAIM UNDER 17 U.S.C. § 1202(a) (RULE 12(b)(6)).

Even under the Digital Millennium Copyright Act ("DMCA"), assuming jurisdiction were proper, Plaintiff's claims fail to state a claim to assert Plaintiffs' Digital Millennium Copyright Act ("DMCA") claims. To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). Labels, conclusions, and "formulaic recitation[s] of the elements" do

not suffice, and the Court need not accept legal conclusions couched as facts. *Id.* Exhibits and documents central to the claim and referenced in the complaint—here, the DEFCAD Terms of Service and the accused pages—may be considered. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Section 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). "Copyright management information" ("CMI") is limited to the categories of information enumerated in § 1202(c), "conveyed in connection with copies . . . of a work," including the name of the author, the name of the copyright owner, and "[t]erms and conditions for use of the work." *Id.* § 1202(c)(2), (3), (6). A § 1202(a) plaintiff must therefore plead (1) CMI, (2) that it is false, (3) that the defendant knowingly provided or distributed, (4) with the intent to induce, enable, facilitate, or conceal infringement. This "double scienter" requirement demands more than knowledge of falsity. *See Cf. Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673–75 (9th Cir. 2018) (construing the parallel scienter language in §1202(b)).

i. <u>The "Creator" Usernames Are Not False Author Information.</u>

Plaintiffs' authorship theory rests on two platform usernames—"ThirdEyeAgent" and "TexasRanger"—displayed as the "creator or contributor" of a project page, and on page metadata labeling the page a "CreativeWork." (Dkt. No. 1, at ¶¶ 70–71, 75, 100–04.) By Plaintiffs' own description, these fields identify the

account that contributed the posting package to the platform, not the author of each embedded photograph or text. (Id. ¶¶ 37, 70 (page "identifies ThirdEyeAgent as the creator or contributor").) A username identifying who uploaded or assembled a file package on a hosting platform is not "the name of . . . the author of a work" within § 1202(c)(2), and it is not false merely because the uploader did not author every component of the package. The schema.org "CreativeWork" tag is generic web-page markup describing the page itself; it is not information "conveyed in connection with copies" of Plaintiffs' photographs or text.

ii. <u>A Generic Link to Site-Wide Terms of Service Is Not CMI, and the Pages Expressly Disclaimed Any License.</u>

Plaintiffs' "false licensing information" theory (Dkt. No. 1, at ¶¶ 109–17, 213–14, 220–21, 227–28, 234–35, 241–42, 248–49, 255–56, 262–63) fails for at least three reasons.

First, the statement "Use of these files is governed by the DEFCAD Terms of Service" (*Id.* at ¶110) is a site-wide notice that governs the relationship between DEFCAD and its users. Plaintiffs do not allege that the Terms contain any work-specific terms "for use of the work." 17 U.S.C. § 1202(c)(6). Section 2.2 addresses the license an uploader grants to DEFCAD, and Section 3.0 directs customers to comply with "applicable licensing terms." (*Id.* at ¶¶ 111–12.) Neither identifies Plaintiffs' works nor purports to state terms of use for them.

Second, the Complaint affirmatively pleads that each page displayed "No license" and stated that "the contributor has not attached a license to the release." (*Id.*



402771645v.1

¶ 109.) The only work-specific licensing information on the pages thus stated, accurately, that no license was conveyed. Plaintiffs' attempt to construct an implied representation—that by linking the general Terms, DEFCAD "represented" it had acquired rights in Plaintiffs' works (*Id.* at ¶113)—contradicts the express statement on the same page and is not plausible. Plaintiffs' own acknowledgment that "[t]he statement that no contributor license is attached does not disclose that DEFCAD lacks" authority (*Id.* at ¶117) appears to concede that Plaintiffs' theory rests on an omission, and § 1202(a) prohibits providing false information, not failing to disclose.

Third, Section 2.2's requirement is that uploaders represent they own the rights they grant (*Id.* at ¶ 111) cuts against Plaintiffs: it places responsibility for authorization on the uploader and is the opposite of a representation by DEFCAD that it acquired rights in Plaintiffs' works.

iii. Plaintiffs Do Not Plausibly Plead the Required Double Scienter.

The Complaint's scienter allegations are formulaic recitations of the statute, repeated verbatim in each Count. (*E.g.*, Dkt. No. 1 at ¶¶ 212, 219, 226, 233, 240, 247, 254, 261 (each Defendant "acted with the intent to induce, enable, facilitate, and conceal infringement").) The underlying factual allegations—that Defendants knew of Plaintiffs' claimed rights from prior litigation *(id.* ¶¶ 105, 118–35)—at most support knowledge of the works, not knowledge that a username or Terms link was false CMI or an intent that it would induce or conceal infringement. Indeed, a page that announces "No license" is the opposite of concealment. And the allegations of who

selected the usernames are pled "on information and belief" and in the alternative ("Wilson or an employee acting at his direction"). (*Id.* ¶¶ 38–39, 115.)

iv. The DMCA Counts Against Defense Distributed, DD Foundation, and Wilson Rest on Impermissible Group Pleading.

Counts 10, 11, 14, and 15 do not allege that Defense Distributed or DD Foundation provided or distributed any CMI. They allege only that these entities "participated" through unnamed personnel, "received monetary proceeds," or are liable "[a]alternatively" through alter-ego theories. (Dkt. No. 1 at ¶¶ 218, 225, 246, 253.) Receipt of revenue is not "provid[ing]" or "distribut[ing]" CMI, and the alter-ego theory fails for the reasons stated in Part V. Counts 12 and 16 against Wilson rely on the same conclusory "provided, approved, directed, and caused" formulation. (*Id.* at ¶¶232, 260.) These Counts should be dismissed. Notably, Elik's DMCA Counts are limited to the August 2026 postings (*Id.* at ¶¶ 238, 245, 252, 259); the Complaint alleges no false CMI on the removed postings.

## VII. ALTERNATIVELY, THE COURT SHOULD COMPEL ARBITRATION AND STAY THIS ACTION.

Should the Court find personal jurisdiction, Defendants move in the alternative to compel arbitration under 9 U.S.C. §§ 3–4.

i. The Federal Arbitration Act Requires Enforcement.

The FAA provides that a written arbitration provision in a contract evidencing a transaction involving commerce "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Court considers whether (1) a valid written agreement to arbitrate

exists, (2) an arbitrable issue exists, and (3) the right to arbitrate has not been waived. Whether the parties formed an agreement is governed by ordinary state-law contract principles. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

ii. Plaintiffs Agreed to the DEFCAD and LEGIO Terms.

Online agreements are enforceable where the user receives reasonable notice of the terms and manifests assent, as with a “clickwrap" requiring the user to check a box or click "I agree.” *See MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028–29 (Fla. 3d DCA 2018); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017). Plaintiffs' own allegations establish assent. Each accused file "required a paid membership to Defendants' Legio service in order to download," and Larosiere downloaded every one of them. (Dkt. No. 1, at ¶¶ 48, 63.) He therefore necessarily purchased or used a Legio membership and agreed to its terms.

Elik, for his part, received and used the credentials for “IvanTheTroll” for his DEFCAD account. (*Id.* ¶150.); (Wilson Decl., Ex. 1, at ¶18). On or about February 1–2, 2020, Mr. Elik bought a $50 yearly LEGIO membership and gave his full name and address. (*Id.* at ¶19). Defense Distributed's payment records show that his billing address matched the address on his card. (*Id.* at ¶20). The IP address recorded at signup traces to the St. Louis metropolitan area, which fits Elik's Alton residence, and is not linked to any known VPN, proxy, or other anonymizing service. (*Id.* at ¶21).

The LEGIO checkout page displayed a clearly visible link to the January 24, 2020 LEGIO Terms and Conditions. (*Id.* at ¶22). Those Terms select Texas law and require binding AAA arbitration in Austin, Texas, of "any claim, dispute or

controversy arising from or related in any way to" the Terms. (*Id.)* He used his DEFCAD account with his LEGIO membership from February 2020 onward. (*Id.* at ¶23).

Mr. Elik also repeatedly agreed to DEFCAD's arbitration terms as a DEFCAD Partner and contributor. (*Id.* at ¶24). On September 7, 2019, he applied to the DEFCAD Partner program and was approved the same day as Partner ID 2, which made him the program's first actual creator. (*Id.)* The application could not be submitted unless he checked "I agree to the Terms of Service" and clicked "Agree & Continue." (*Id.* at ¶25). The Terms then in effect (TOS v.2.0) chose Texas law and the Federal Arbitration Act. They also required broad arbitration in Travis County, Texas, under the AAA Commercial Rules, with jury-trial and class-action waivers. (*Id.)*

From 2019 through 2022, Mr. Elik received the benefits of partnership, including donations and fourteen monthly sponsorship payments totaling several thousand dollars. DEFCAD's records show that from 2019 through 2023, he uploaded and approved the uploading of files at least thirteen times, including AK, AR-15, Skorpion, and Glock receiver and frame designs. (*Id.* at ¶27). Each time, he checked three separate boxes accepting the Terms of Service, the Contributor Terms, and the Submitter Terms. Those terms grant DEFCAD a perpetual, irrevocable, worldwide license to his uploads. (*Id.* at ¶¶29–31). The current Terms (TOS v.3.5), which the Complaint itself relies on, also require AAA arbitration in Austin under Texas law. (*Id.*). Neither DEFCAD nor Defense Distributed has ever agreed to waive arbitration or to litigate Mr. Elik's claims in Florida. (*Id.* at ¶34). Thus, Plaintiffs'

agreed to DEFCAD and LEGIO's Terms of Service and, therefore, to arbitrate the claims asserted in this lawsuit.

iii. Plaintiffs' Claims Fall Within the Arbitration Agreement, and Arbitrability Is Delegated.

Plaintiffs' claims arise from the files they downloaded through DEFCAD subject to the Terms, from the Terms themselves (which Plaintiffs allege are false CMI), and from Elik's DEFCAD account. (Dkt. No. 1 at ¶¶ 63, 110–17, 149–64.) Doubts about scope are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Where, as here, the agreement delegates arbitrability to the arbitrator—including through incorporation of AAA rules—the Court must enforce the delegation even if it views the arbitrability argument as weak. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)(recognizing that a delegation clause gives an arbitrator authority to decide even the initial question of whether the parties' dispute is subject an arbitration"); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).

iv. The Action Must Be Stayed Pending Arbitration.

When a party requests a stay of claims subject to arbitration, Section 3 of the FAA requires the court to stay, rather than dismiss, the proceeding. *Smith v. Spizzirri,* 601 U.S. 472, 478 (2024). Defendants request a stay of all claims, including any claim found non-arbitrable, pending completion of arbitration.

## VIII. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF TEXAS.

Defendants request, in the further alternative, transfer to the Western District of Texas, Austin Division. Because the alternative forum is another federal district, the codified form of the forum non conveniens doctrine—28 U.S.C. § 1404(a)—governs; the common-law forum non conveniens doctrine applies only where the alternative forum is a foreign or state forum. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60–61 (2013); *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). If the Court finds personal jurisdiction lacking as to any Defendant, it may also transfer under 28 U.S.C. § 1406(a) or § 1631 rather than dismiss. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Venue under 28 U.S.C. § 1400(a) lies where a defendant "may be found," which means where it is subject to personal jurisdiction; for the reasons above, Defendants may not be "found" in this District, and venue is improper here.

### i. <u>This Action Could Have Been Brought in the Western District of Texas</u>.

Every Defendant resides in Austin, Texas, and is subject to general jurisdiction there. (Dkt. No. 1 at ¶¶ 7–10.) Venue is proper there under 28 U.S.C. §§ 1391(b)(1) and 1400(a).

### ii. <u>The Convenience and Interest-of-Justice Factors Strongly Favor Transfer</u>.

Courts in this Circuit weigh: (1) the convenience of the witnesses; (2) the location of relevant documents and ease of access to sources of proof; (3) the

convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)(citing *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y. 1990)).

- Witnesses and compulsory process. The key non-party witnesses Plaintiffs themselves identify—DEFCAD personnel Garret Walliman and Thomas Odom—performed their work in Austin. (Dkt. No. 1, at ¶¶ 36, 125, 150.) They are beyond this Court's subpoena power for trial, Fed. R. Civ. P. 45(c)(1), but within that of the Western District of Texas. (Wilson Decl., Ex. 1 at ¶11, 15).

- Documents and sources of proof. The website, servers, administrative logs, view/download records, and membership and revenue records Plaintiffs seek (id. ¶¶ 41–42, 45, 289(h)) are maintained by Defendants in Texas.

- Locus of operative facts. The postings were created, the usernames assigned, the Terms drafted, and the IvanTheTroll account administered in Austin. (*Id.* ¶¶ 8, 20, 36–39, 150–52.) The only Florida event is Larosiere's self-initiated download.

- Plaintiffs' choice of forum. That choice is entitled to diminished weight where, as here, the operative facts occurred elsewhere, and to little weight as to Elik, who does not reside in Florida. Plaintiffs' choice is further undermined by the Terms' forum and arbitration provisions.

- Governing law and efficiency. Both districts are equally familiar with federal copyright and Lanham Act law. Transfer would consolidate the case in the forum where all Defendants are subject to jurisdiction, eliminating piecemeal jurisdictional litigation. Defendants acknowledge that this Court presided over the prior, settled Larosiere actions, which settled only some infringement claims, but not the "new reproductions and distributions of [Plaintiffs'] works beginning

in August 2026," (Dkt. No. at ¶2), the lion's share of the copyright infringements discussed in this lawsuit[2].

**WHEREFORE,** Defendants, CODY RUTLEDGE WILSON, DEFCAD, Inc., and DEFENSE DISTRIBUTED, respectfully request that the Court (1) dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2); (2) dismiss Counts 9 through 16 with prejudice for failure to state a claim under Rule 12(b)(6); or, in the alternative, (3) compel arbitration of Plaintiffs' claims and stay this action under 9 U.S.C. §§ 3–4; or, in the further alternative, (4) transfer this action to the United States District Court for the Western District of Texas, Austin Division, under 28 U.S.C. §§ 1404(a), 1406(a), or 1631; and (5) grant such further relief as the Court deems just.

**CERTIFICATE OF GOOD FAITH CONFERENCE PURSUANT TO LOCAL RULE 3.01(g)**

Pursuant to M.D. Fla. Rule 3.01(g), on November 17, 2026, the undersigned conferred with Mr. Zermay[3], Plaintiffs' Counsel, prior to filing the instant motion with the Court via Teams' Meeting. Plaintiffs' Counsel opposes the relief sought in the motion.

Dated: November 17, 2026

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN& DICKER LLP**

By: *s/ Leia V. Leiner*

[2] Plaintiffs allege that seven (7) DEFCAD.com postings were created in August 2026, that five (5) postings were removed in March 2026, and that Defendants reproduced Plaintiffs' registered photographs and one literary work. Thus, seven (7) out of twelve (12) postings are at issue in this action that were not in the prior Larosiere actions.

[3] Mr. Zermay represented that he was appearing at the meet and confer on November 17, 2026 via Teams meeting on behalf of both Plaintiffs.

Leia V. Leitner
Florida Bar No: 105621
111 North Orange Avenue
Suite 1200
Orlando, FL 32801
Telephone: 407-423-7287
Facsimile: 407-648-1376
Leia.Leitner@wilsonelser.com
Alyssa.Heitman@wilsonelser.com

*Limited Appearance on behalf of Defendants,* DEFCAD, Inc., Defense Distributed, and Cody Wilson.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the **17th** day of November, **2026**, a true and correct copy of the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF E-Filing Portal, which will serve an electronic copy of the foregoing on the following: Zachary Z. Zermay, Esq., Florida Bar No: 1002905; Zermay Law, P.A., *Counsel for Plaintiff,* 1200 Fourth Street, #1102, Key West, Florida 33040; Telephone: 305-767-3529; Zach@Zermaylaw.com and info@Zermaylaw.com; Charles (Chad) Flores, Esq., Flores Law PLLC, *Counsel for Defendants, DD Foundations, LLC,* 917 Franklin Street, Suite 600, Houston, Texas 77002, Telephone: 713-364-6440, CF@ChadFlores.law; chad-flores-7646@ecf.pacerpro.com and service@chadflores.law.

*/s/Leia V. Leitner*
Leia V. Leitner