**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MATTHEW LAROSIERE and JOHN ELIK,

Plaintiffs,

v.

Case No. 6:26-cv-2173-JSS-LHP

CODY RUTLEDGE WILSON; DEFCAD, INC.; DEFENSE DISTRIBUTED; and DD FOUNDATION LLC,

Defendants.

__________________________________/

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

Under Federal Rule of Civil Procedure 65, 17 U.S.C. §§ 502(a) and 1203(b)(1), and Local Rule 6.02, Plaintiffs move to enjoin Defendants from reproducing any registered work held by either Plaintiff without authorization. Alternatively, Plaintiffs ask the Court to limit that prohibition to the 226 works identified in Exhibit D. Under either alternative, Plaintiffs also seek removal of those 226 works from public access and an order barring their unauthorized distribution or public display and the use of false authorship or licensing information in connection with them. Plaintiffs ask the Court to waive security.

## INTRODUCTION

This is the fourth time Plaintiffs have had to sue Defendants over the same kind of infringement, and Defendants answered this suit by *broadening their infringement*. Only months after settling *Larosiere v. Wilson I* and *II* and taking down the works at issue there, Defendants took 226 of Plaintiffs' registered works. They credited the works to other authors, buried some inside unrelated packages, and sold access to them through a paid membership.

Plaintiffs sued on September 21. Since then, Defendants have taken the works out from behind the paywall so as to maximize their distribution, so anyone can download them without signing in or paying, and they now display the works beside advertisements. Ex. B ¶¶ 3, 6; Ex. E at 1–5.

Defendants also changed how the works are presented. Six of the pages now carry Elik's professional name, IvanTheTroll, beside terms telling visitors that he licensed the files to DEFCAD. Elik did not upload these works and never authorized their distribution. Ex. A ¶¶ 1, 9–11; Ex. B ¶ 8; Ex. F § 2.2.

Defendants did all this knowing about the suit. Wilson filed a sworn declaration in this case on DD Foundation's behalf while he and the other three Defendants were refusing to open the door to a process server. Doc. 23-1; Doc. 29-1 at 2. In the same weeks, they launched GatGPT, an AI service

DD LEGIO advertises as able to "remix" the files on DEFCAD. Every page carrying Plaintiffs' works now advertises the ability to "Remix in GatGPT." That threatens more than further verbatim copying. A generated illustration can infringe by recasting the protected composition of a photograph in new form. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1215–16 (11th Cir. 2000); *see N.Y. Times Co. v. Microsoft Corp.*, No. 23-cv-11195, Doc. 514 at 15–17 (S.D.N.Y. Apr. 4, 2025). And unlike a public posting, anything GatGPT delivers to an individual customer leaves nothing for Plaintiffs to find. Ex. B ¶¶ 9, 11; Ex. G at 1–2.

Plaintiffs found ninety-six of Larosiere's Amigo Grande photographs only because they downloaded a package titled as an SF5 remix and went through it. Defendants have shown they will relabel, hide, and repost Plaintiffs' works for as long as they are allowed to. Without an injunction, Plaintiffs will have to keep finding the next package and filing the next suit. The Court should stop it now.

## BACKGROUND

### A. Plaintiffs own the registered works.

John Elik created the SF5 Build Tutorial and each of the 225 photographs at issue. Matthew Larosiere owns the copyrights in the tutorial and 152 photographs. Elik owns the copyrights in the remaining 73 photographs. Ex. A ¶¶ 1–5; Ex. B ¶¶ 1–2.

Larosiere's works are the SF5 Build Tutorial (TX0009372196), 50 SF5 photographs (VA0002381769), 96 Amigo Grande photographs (VA0002381513), and six 10/22 photographs (VA0002449526). Elik's works are four photographs registered under VA0002479454, 44 under VA0002499002, and 25 under VA0002498997. Ex. C at 1, 3, 6, 11, 13, 15, 17; Ex. A ¶¶ 2–5.

Exhibit D identifies each of these works and matches it to the copy obtained from DEFCAD. Ex. A ¶¶ 6–8; Ex. D at 1–140. Plaintiffs seek to enjoin Defendants from reproducing any of Plaintiffs' registered works without authorization. In the alternative, Plaintiffs seek an injunction limited to the 226 works identified in Exhibit D.

**B. The postings copy Plaintiffs' works.**

The August postings contained the following registered material. Compl. ¶¶ 65–91; Ex. A ¶¶ 6–8; Ex. B ¶¶ 3–5; Ex. D at 1–140.

> "SF5-3EYE-Remix_V1.0 BETA Media": the SF5 literary work, fifty SF5 photographs, and ninety-six Amigo Grande photographs.
>
> "Ivan's 3D Printable 10/22 Receiver – Media": six photographs under VA0002449526.
>
> "3011 Printable 1911 Frame – Media": one photograph under VA0002479454 and forty-four under VA0002499002.
>
> "3011 Double Stack – Media": forty-three photographs under VA0002499002 and three under VA0002498997.

"Plastikov V3.0 3D Printable AKM Receiver – Media": two photographs under VA0002479454 and twenty-one under VA0002498997.

"Printable Case Deflector AR15 – Media": one photograph under VA0002498997.

"UBAR2 Printable AR-15 Lower – Media": one photograph under VA0002479454.

Elik compared the photographs and text to the registered deposits. The SF5 package contained not only the SF5 tutorial and photographs but ninety-six photographs from Amigo Grande, a project its title did not mention. Compl. ¶¶ 61–63, 67, 70–74; Ex. A ¶¶ 6–8; Ex. B ¶¶ 3–5; Ex. D at 1–2, 65–139.

**C. After Plaintiffs sued, DEFCAD redirected the postings to pages bearing Elik's name.**

In August, each of the seven postings was a standalone media page on defcad.com, and downloading from it required a paid LEGIO membership. The SF5 page credited ThirdEyeAgent as the creator, and the other six credited TexasRanger. Each page's metadata named the same account as creator and DEFCAD as publisher. Compl. ¶¶ 100–06; Ex. B ¶¶ 3–5.

By November 19, each of the seven August addresses redirected to a broader project page with its own media section, where the same files could be downloaded without a DEFCAD account. The SF5 address now leads to a page still credited to ThirdEyeAgent. The other six lead to pages credited to IvanTheTroll. Compl. ¶¶ 153–56; Ex. B ¶¶ 6, 8, 10.

IvanTheTroll is Elik's professional name, but the profile is not his. Wilson's employee Garret Walliman created it and has been using it without permission, presenting works under Elik's name. Elik did not supply or approve the September 25 posting titled "John Elik's Document Preservation." Compl. ¶¶ 149–59; Ex. A ¶¶ 1, 9–11.

The new pages also purport to tell visitors who may use the files. Each displays "No license" and states: "The contributor has not attached a license to this release. Use of these files is governed by the DEFCAD Terms of Service." Section 2.2 of those Terms describes a license the uploader grants DEFCAD, including the right to sublicense, and requires the uploader to hold the rights it grants. Six of the pages now tell visitors that Elik uploaded these works and licensed them to DEFCAD. He did neither. Ex. B ¶ 8; Ex. F § 2.2; Ex. A ¶¶ 9–11.

Defendants know whose works these are. Wilson testified about the registrations and the parties' disputes over them. Ex. H at 292:19–296:13. The SF5 work itself carries a copyright notice and express restrictions. Ex. D at 1.

**D. Access to the written works changed after filing.**

On September 27, Larosiere downloaded the works from all seven postings without signing in or paying. He saw advertisements alongside the listings in the search results. When he checked again on November 18, every

work identified in the complaint as then available remained available. Ex. B ¶¶ 3, 6, 10; Ex. E at 1–5.

**E. DEFCAD invites visitors to remix the seven projects in GatGPT.**

On October 22, 2026, DD LEGIO announced that GatGPT had “quick access to all of the live files” and could “remix existing designs.” Its listed features include: “Create BOMs, step-by-step instructions, and GD&T drawings/blueprints.” BOMs are bills of materials. The GatGPT service page states that every plan requires a paid DEFCAD membership. By November 19 each of the seven destination pages displayed a “Remix in GatGPT” link. On the 3011 Double Stack page, the link identifies that particular project by name and number. Ex. G at 1  2, 4; Ex. B ¶ 9.

**F. Defendants control the platform and can comply.**

Wilson identifies DEFCAD, Inc. as the operator of defcad.com and DD Foundation as the operator of DD LEGIO. He describes his role in publishing and maintaining the Terms. Doc. 23-1 ¶¶ 2, 4–8. The entities previously described their file-sharing operation as sharing income, as alleged in Complaint ¶ 17. More directly on the question of compliance, Wilson has described how Defense Distributed and DEFCAD can instruct personnel to block specific works and restrict access to them. Ex. I ¶¶ 4, 6–8.

## ARGUMENT

Plaintiffs must show a substantial likelihood of success, that they will suffer irreparable injury unless an injunction issues, that the threatened injury outweighs the harm the injunction would cause Defendants, and that the injunction would not disserve the public interest. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). The Copyright Act authorizes injunctive relief against infringement and violations of § 1202. 17 U.S.C. §§ 502(a), 1203(b)(1).

### I. PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED.

Plaintiffs are likely to win each of their claims. The infringement claim is simple. Plaintiffs own registered copyrights in the works at issue, and Defendants distributed exact copies of them. Defendants' only answers are to try to enforce an arbitration clause in an agreement neither Plaintiff signed—one that expressly bars Plaintiffs from the site—and to point, without evidence, to unrelated uploads from years before the infringement at issue. The § 1202 claim stands on its own. Defendants credited Plaintiffs' works to accounts that never created them, then told visitors the works were licensed for use, in six cases under Elik's own name. They did all of this knowing whose works these were.

**A. Plaintiffs own the works, and Defendants copied them.**

Infringement requires ownership of a valid copyright and copying of original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Elik identifies the photographs he owns and the works he created for Larosiere; both are parties to this action and confirm the transfer and ownership. In the side-by-side comparisons, the same photographs and prose appear in both the deposit and the DEFCAD download. Ex. A ¶¶ 1–8; Ex. B ¶¶ 1–2, 5; Ex. D at 1–3, 65, 115.

A technical subject does not place an author's photographs or choice of words in the public domain. *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1312–13 (11th Cir. 2008). A reader can describe the same process independently. DEFCAD supplied Elik's and Larosiere's actual photographs and written text.

**B. Defendants have no license, and this is not fair use.**

Defendants' license theory is that because they allege Elik once contributed other projects to DEFCAD, he must have licensed *these* works too. That does not follow. Wilson says Elik uploaded projects, accepted contributor terms, and was paid. Doc. 42-1 ¶¶ 23–32. But a license covers what the owner actually granted, and Elik never uploaded or authorized any of his registered works. Even if he had (he did not), he explicitly revoked authorization, telling Walliman and Wilson to delete the IvanTheTroll profile

in August 2022. Wilson's records do not suggest otherwise, as Defendants have carefully drafted around *actually* asserting permission to distribute any work. Compl. ¶¶ 36–38, 149–59; Ex. A ¶¶ 9–11; Ex. F § 2.2.

Defendants cannot call this fair use, because DEFCAD did nothing to these works except copy and sell them. Fair use turns on how the copies are actually used. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 532–35 (2023); 17 U.S.C. § 107. Here, DEFCAD reproduced the works whole for the same purpose the originals serve. It sold access to those copies through paid memberships and later gave them away beside advertising. A reader who gets the tutorial or photographs from DEFCAD has no reason to get them from anyone Plaintiffs authorize. And Plaintiffs' deliberate choice not to license their work for this use, quite obviously, does not give that market away for free. *Peter Letterese*, 533 F.3d at 1317–20.

**C. The false creator information independently violates § 1202(a).**

Section 1202(a) prohibits knowingly providing or distributing false copyright management information with intent to induce, enable, facilitate, or conceal infringement. Copyright management information includes the name of the author or copyright owner, terms and conditions for use, and links to that information. 17 U.S.C. § 1202(a), (c)(2)–(3), (6)–(7).

Each display of Plaintiffs' works misstates who may use the works, and that statement is itself false copyright management information. Every page

displaying Plaintiffs' work says "No license" and tells the visitor that use of the files "is governed by the DEFCAD Terms of Service," under which the contributor supposedly granted DEFCAD the rights it is exercising. That is a statement of the "terms and conditions for use of the work." § 1202(c)(6). It is false, because no owner ever granted those rights. Putting Elik's name on six of the pages only makes it worse: it makes the false terms look as though they came from him, when he never supplied or authorized any of these copies. Ex. A ¶¶ 1, 9–11; Ex. B ¶¶ 2, 8; Ex. F § 2.2.

Defendants knew exactly what they were doing. Wilson knew about the registrations and the dispute over them. Many of the registered works carry a copyright notice and bar commercial use. When the earlier postings came down, the same material came back under new titles and new creator names, which DEFCAD's administrators themselves arbitrarily assigned regardless of who uploaded each file. The point of renaming the packages, crediting them to other accounts, and pointing visitors to the DEFCAD Terms was to make unauthorized copies look legitimate and keep them circulating. Compl. ¶¶ 36–39, 100–06; Ex. H at 292:19–293:15, 294:22–295:9; Ex. D at 1; Ex. B ¶¶ 4, 8.

Defendants will say that naming Elik cannot be false, because he really is the author. But naming the right author can still tell a lie about who gave permission, and courts have held that it does. In *McClatchey v. Associated*

*Press*, metadata correctly named the photographer but called her an AP "stringer." Read together with AP's subscriber agreement, that label suggested AP owned the copyright, and the court denied AP summary judgment on the false-CMI claim. No. 3:05-cv-145, Doc. 38 at 9–10 (W.D. Pa. Mar. 9, 2007). Similarly, in *Splunk Inc. v. Cribl, Inc.*, allegations that the defendant posted another's work under false licensing terms to hide his own copying stated a claim under § 1202(a). 662 F. Supp. 3d 1029, 1054 (N.D. Cal. 2023). The same thing is happening here. The six pages bearing Elik's name tell visitors that DEFCAD has his permission. He gave none, and Wilson knew Elik had demanded that the account be deleted, and has been sued over these works already. Placing those license terms beside Elik's name could have only one purpose: to make visitors believe he authorized the very distribution he has been fighting.

## I. WITHOUT AN INJUNCTION, PLAINTIFFS WILL SUFFER IRREPARABLE HARM.

Without an injunction, Plaintiffs will lose control of their works for good, and no damages award can get it back. Defendants hide Plaintiffs' works inside packages that never mention them, so the copies cannot be tracked once they leave DEFCAD. Defendants have already been sued over these works, taken them down, and put them right back up under new names, so suing over each posting is no remedy. Worse, now they offer an AI service built to "remix" these files into private output that no one will ever

see, making distribution impossible to track. And Plaintiffs did not sit on their rights: they sued within weeks, chased Defendants through a month of dodged service, and moved within days of Defendants' appearance.

**A. Plaintiffs cannot trace the copies once they leave DEFCAD.**

Defendants hide Plaintiffs' works where Plaintiffs cannot find them. The August SF5 package was titled and described as an SF5 project, yet it contained ninety-six of Larosiere's Amigo Grande photographs, which nothing on the page mentioned. Plaintiffs found those photographs only by downloading the package and going through it image by image. No search of DEFCAD's listings would have turned them up, and nothing stops Defendants from burying Plaintiffs' works inside other packages the same way. Ex. A ¶¶ 6–8; Ex. B ¶¶ 4, 11; Ex. D at 65–114.

DEFCAD's public counters provide no means for Plaintiffs to identify everyone who receives a copy, much less where later recipients send it. The same problem persists if an initial download is recorded. A fee assessed against Defendants for a known download cannot recover the copies passed on from it or restore Plaintiffs' ability to decide where the work will next appear. See *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1218–20 (C.D. Cal. 2007) (addressing the difficulty of tracing and compensating for continuing digital infringement).

**B. Defendants resumed copying and took additional works.**

Defendants have already shown that taking the works down once does not stop them. The earlier litigation concerned chiefly the same works, and those postings came down. By August, the same works were back on DEFCAD under a different title. Since this suit began, Defendants have not stopped. They have made some of the works easier to get, letting anyone download them without an account. A judgment about yesterday's posting cannot recover the copies made since, and it will not stop Defendants from renaming the package and posting it again. Only an injunction can. Compl. ¶¶ 65–74; Ex. B ¶¶ 3–6, 10–11.

Without an injunction, Plaintiffs' only remedy is to find each new posting and sue again, and courts recognize that is no real remedy. In *Pacific & Southern Co. v. Duncan*, the Eleventh Circuit held it was an abuse of discretion to deny an injunction when continued copying would force the owner to bring "many different infringement actions." 744 F.2d 1490, 1499 (11th Cir. 1984). And in *Wright v. Nguyen*, the court granted a preliminary injunction because the defendants could "readily relaunch under new domains or storefronts," leaving the plaintiffs without control over their own works. No. 25-cv-6149, Doc. 37 ¶¶ 9–10, 12 (S.D.N.Y. Sept. 3, 2025). Defendants have already relaunched these works once, under a new name. Nothing but an injunction stops them from doing it again.

**C. GatGPT now lets Defendants copy the works where Plaintiffs can never trace it.**

GatGPT gives Defendants a way to keep copying Plaintiffs' works without leaving anything to find. DD LEGIO advertises it as having "quick access to all of the live files" on DEFCAD and as able to "remix existing designs" into step-by-step instructions, and a "Remix in GatGPT" button now sits on all seven project pages where Plaintiffs' works appear. Anything GatGPT produces goes privately to the customer who asked for it. If it reproduces Plaintiffs' works, no public posting or listing will ever show it, and the infringement is hidden from Plaintiffs and the Court alike. Ex. B ¶¶ 9, 11; Ex. G at 1–4.

That inability to trace further copying supports a finding of irreparable harm. *See Yorktown Sys. Grp. Inc. v. Threat Tec LLC*, 108 F.4th 1287, 1297 (11th Cir. 2024) (affirming preliminary relief based in part on the "exceptional difficulty in determining the scope of economic damages"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) (finding irreparable harm because damages against the operator would not reach further infringement outside its service using copies obtained through it).

**D. The chronology supports interim relief.**

Plaintiffs have not delayed. The conduct this motion targets began after Plaintiffs sued, and Defendants spent most of that time avoiding service.

Larosiere downloaded the seven packages on August 29, and Plaintiffs filed suit on September 21. Then Defendants changed how the works are distributed. DD LEGIO launched GatGPT on October 22. On September 27, Larosiere downloaded the works from all seven postings without an account or payment. They remained available on November 18. By November 19, all seven addresses led to pages carrying the GatGPT remix button, six of them under Elik's name. Ex. B ¶¶ 3, 6, 8–10; Ex. G at 1–2.

Meanwhile, Defendants made themselves hard to reach. Between October 6 and October 20, a process server went five times to 8403 Cross Park Drive in Austin to serve Wilson, DEFCAD, and Defense Distributed. The staff inside would not open the door. On the last attempt, one employee started toward it and another told him not to. Doc. 29-1 at 2. Wilson, at the same time, had already filed a sworn declaration in this case on DD Foundation's behalf. Doc. 23-1. Their counsel finally accepted service on October 27, and those Defendants did not appear until November 17. Docs. 36–38, 42. Plaintiffs filed this motion within days.

Plaintiffs moved promptly. The harm this motion addresses is new: in August, Plaintiffs knew only that DEFCAD was selling access to the works. After they sued, they learned that anyone could download the written material without an account and that all seven project pages invited users to remix the files in GatGPT. Delay "is not particularly probative in the context

of ongoing, worsening injuries." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming a copyright preliminary injunction where the studios acted when the infringing service expanded).

The motion would be timely even if Defendants had changed nothing. Plaintiffs sued within 23 days of downloading the packages, sent a process server to the remaining Defendants' office five times, and moved within days of their November 17 appearance. Defendants cannot turn their own resistance to service into evidence that Plaintiffs lacked urgency. S*ee PIU Mgmt., LLC v. Inflatable Zone Inc.*, 2010 WL 681914, at *7 (S.D. Tex. Feb. 25, 2010) (granting a preliminary injunction where the defendant's resistance to service helped explain the timing of the motion). This record bears no resemblance to the five months of unexplained inaction in *Wreal*. 840 F.3d at 1248–49.

## III. THE BALANCE OF HARMS AND THE PUBLIC INTEREST FAVOR THE INJUNCTION.

The injunction costs Defendants almost nothing, while every day without it costs Plaintiffs copies they can never recover. Defendants already know how to comply. In another case, Wilson described under oath how his staff block access to specific works. Ex. I ¶¶ 6, 8, 10. The order asks for no more than that. Any revenue they lose because they can no longer offer Plaintiffs' works without permission deserves little weight. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866–67 (9th Cir. 2017) (holding that the

financial hardship of stopping likely infringement did not outweigh the copyright owners' irreparable harm). On the other side, each new download puts Plaintiffs' work in the hands of someone they cannot identify and from whom they cannot get it back.

The public loses nothing either. Anyone remains free to discuss these projects, their underlying ideas and designs, and this lawsuit. Copyright permits "free communication of facts while still protecting an author's expression." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985)). That Defendants now give the works away for free is no reason to deny relief. *Pac. & S. Co. v. Duncan*, 744 F.2d 1490, 1499–1500 (11th Cir. 1984) (rejecting increased public access to the copyrighted work as a reason to deny an injunction). And the public has a real interest in honest statements about who made a work and who may license it. *Wright v. Nguyen*, No. 25-cv-6149, Doc. 37 at 6 ¶ 13 (S.D.N.Y. Sept. 3, 2025) (finding that an injunction protecting the artist's expression served the public interest because it "protects consumers from deception").

## IV. THE PENDING MOTIONS DO NOT PREVENT INTERIM RELIEF.

Defendants contest personal jurisdiction and seek arbitration. Docs. 23, 42. Neither stands in the way. Defendants made the works available for download in Florida, including to Larosiere, and the injury falls on Plaintiffs

here. Florida's long-arm statute and due process reach that conduct. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350–58 (11th Cir. 2013). And Plaintiffs never agreed to arbitrate. Doc. 39.

## V. SCOPE OF THE INJUNCTION.

Section 502(a) permits an injunction to reach beyond the particular work that gave rise to suit. *Pac. & S. Co. v. Duncan*, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984); *Pac. & S. Co. v. Duncan*, 792 F.2d 1013, 1014 (11th Cir. 1986) (upholding an injunction reaching later broadcasts because the injunction prohibited the same infringing practices previously sued over). An order confined to Exhibit D would stop Defendants from copying the same photograph under a new filename but would do nothing for the continued and varied infringements of Plaintiffs' works Defendants have made abundantly clear they will make absent injunction. Plaintiffs therefore seek a prohibition on unauthorized reproduction of any of their registered works. If the Court concludes that the preliminary record warrants narrower relief, it should apply the reproduction prohibition to the 226 Exhibit D works.

The order runs against DEFCAD, which operates the site, and Defense Distributed, which Wilson says can restrict access to particular works. Wilson and DD Foundation are bound to the extent they act as officers or agents of those entities, or in active concert with them, and receive actual notice. Fed. R. Civ. P. 65(d)(2); Doc. 23-1 ¶¶ 2, 4–5; Ex. I ¶¶ 4, 6–8.

## VI. THE COURT SHOULD WAIVE SECURITY.

Security should be waived, or set at a nominal amount, because Defendants stand to lose nothing, seeing they are presently giving away Plaintiffs' works without charge. The Court has discretion to require no security at all. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.*, LLC, 425 F.3d 964, 971 (11th Cir. 2005). Defendants have restricted particular works before, and the order lets them keep the rest of their site online. Neither Plaintiff authorized Defendants to distribute these works, and, as explained earlier, Defendants are making the works available for download without paid membership, and Larosiere downloaded each work without paying. Wilson confirms that Defendants have used existing platform controls to restrict particular works. Ex. A ¶¶ 10–11; Ex. B ¶¶ 2, 6, 12; Ex. I ¶ 8. On that record, Plaintiffs ask the Court to waive security or, alternatively, set a nominal cash bond of $100.

## RELIEF REQUESTED

Plaintiffs ask the Court to enter a preliminary injunction, effective on actual notice and continuing until further order, providing that:

1. **Works**. "Plaintiffs' Registered Works" means any work registered with the U.S. Copyright Office in which either Plaintiff owns the exclusive right of reproduction. "Exhibit D Works" means the 225 photographs and the SF5 Build Tutorial identified by registration, deposit-copy identifier, and image or text in the pages attached to and made part of this order.

2. **Persons bound.** The injunction binds DEFCAD, Inc. and Defense Distributed; their officers, agents, servants, employees, and attorneys; and all persons in active concert or participation with them who receive actual notice, including Cody Rutledge Wilson and DD Foundation LLC to the extent they act in those capacities.

3. **Reproduction and distribution**. Except as authorized by the owner or permitted by the Copyright Act, the persons bound shall not reproduce any of Plaintiffs' Registered Works. They shall not distribute, publicly display, or deliver any Exhibit D Work through DEFCAD, DD LEGIO, GatGPT, or any other service they operate or control. These prohibitions apply whether the work appears alone or within a larger document, archive, or package, regardless of its filename, package name, URL, or stated creator.

**Alternative request**: If the Court limits the reproduction prohibition to the works compared in Exhibit D, Plaintiffs request the same order with "any Exhibit D Work" substituted for "any of Plaintiffs' Registered Works" in the first sentence of paragraph 3.

4. **Removal.** Within seventy-two hours after actual notice, the persons bound shall disable public access to every copy of a covered work under their control, including through any retrieval or download function. They may instead remove the covered material from a package and continue distributing the rest.

5. **False information.** In connection with any covered work, the persons bound shall not identify ThirdEyeAgent, TexasRanger, or any person other than its actual author or owner as the author or copyright owner of Plaintiffs' expression, and shall not represent that they or any account holder has authority to reproduce, distribute, or sublicense that expression.

6. **Security.** Security is waived or, alternatively, set at $100 in cash.

## CONCLUSION

The Court should enter the preliminary injunction described above and waive security.

Dated: November 25, 2026

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay
Florida Bar No. 1002905
Zermay Law, P.A.
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
(305) 767-3529
zach@zermaylaw.com
Lead Counsel for Plaintiffs

*/s/ Matthew Larosiere*
Matthew Larosiere
Florida Bar No. 1005581
The Law Office of Matthew Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
(561) 452-7575
larosieremm@gmail.com
Counsel for Plaintiff John Elik

**CERTIFICATE OF SERVICE AND NOTICE UNDER 6.02(b)**

On November 25, 2026, Plaintiffs notified counsel for all Defendants by email that Plaintiffs would file this motion that day and provided copies of the motion and proposed order. I certify that on November 25, 2026, I filed this motion and its exhibits through CM/ECF, which will serve all counsel of record.

*/s/ Matthew Larosiere*